Julius Schmutz v. Commissioner.
Schmutz v. Commissioner
Docket No. 109555.
United States Tax Court
1943 Tax Ct. Memo LEXIS 385; 1 T.C.M. (CCH) 841; T.C.M. (RIA) 43146; March 27, 1943
*385 Henry H. Mathis, Esq., for the petitioner. J. O. Durkan, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion KERN, Judge: The present case comes before us on respondent's findings of a deficiency in petitioner's income tax of $805.78 for the yea. 1939. The only question is whether petitioner may take as a bad debt deduction in the year $12,000, representing his advances to a bank which became insolvent. There is no controversy on the facts and so much as need be given will be set out. [The Facts] Petitioner in 1936 bought 400 shares of stock of the Peoples Bank of Louisville, Kentucky, for $5,000. An interesting story lies back of the purchase but we need say no more than that it was motivated largely by the desire to befriend the bank's president who had been of vital assistance to petitioner when he started out in business. The motive is of significance only in the light it may throw on the later agreement upon which the question here hinges. The Peoples Bank encountered financial difficulties so serious that by 1938 its capital had become impaired and the state bank examiner required that more money be put in, if it was to keep on operating. The board *386 of directors held a meeting and three of their number agreed to advance a total of $80,000 under the agreement of November 7, 1938, the particulars of which are given below. They thought that a general assessment at that time would create a run on the bank. Of this sum, petitioner advanced to the bank the $12,000 here in question. In 1939 the bank closed and went into receivership. The petitioner was never repaid, and made no effort to have an assessment laid on the stockholders of the bank. The pertinent parts of the agreement of November 7, 1938 between the bank and its directors on the one part and the petitioner and two others on the other, are as follows: By Article 2 petitioner agreed to pay the bank $10,000 "to be received by the Bank and credited to the Bank's 'Undivided Profits Account'"; and by Article 5, within 60 days to pay a like sum also to be credited. SEVEN. The payments, and each of them, hereinabove provided shall be treated by the Bank and by the Directors as contributions to the undivided profits of the Bank for the purposes aforesaid, and shall be subject to the terms, covenants and provisions hereinafter set forth. Article 8 provided that the directors should *387 call a special meeting of the stockholders for the purpose of making an assessment sufficient to cover the impairment of the bank's stock, on the request of the contributing parties to the agreement or a majority of them. NINE. The parties of the third part, [petitioner and the other contributors], and each of them, hereby waive any and all claims which they, or either of them, may otherwise have against the Bank for a return or repayment of the aforesaid contributions, except (a) The parties of the third part shall be entitled to reimbursement from the proceeds derived from the assessment against the stockholders in the next preceding paragraph provided, if and when made, to the extent of the money, if any, realized by the Bank pursuant to the steps and proceedings for the assessment provided in the next preceding paragraph, said contributions being made by the parties of the third part in lieu of immediate assessment upon the stockholders; and (b) The Bank and the Directors agree that the parties of the third part shall be reimbursed pro rata for the contributions aforesaid out of net earnings, with the approval of the Director of the Division of Banking of the Commonwealth of *388 Kentucky, before the payment of any dividend to stockholders. Any and all reimbursements which the parties of the third part may at any time be entitled to under the next preceding paragraphs, or either of them, shall be paid to the parties of the third part ratably, based upon that proportion of the entire amount contributed by each of them respectively as hereinabove provided. TEN. If and when the assessment is made by the Directors upon the stockholders of the Bank as hereinabove provided, all of the stock of the Bank which is cancelled as authorized by the above said Section 165a-15, Kentucky Statutes, or any amendments which may be made thereto, shall be credited to the parties of the third part on the same basis as hereinabove provided, and new stock shall be issued by the Bank in lieu thereof to the parties of the third part on the basis or in proportion hereinabove provided. [Opinion] On these facts respondent contends that petitioner's advance to the bank was not in the nature of a loan and, therefore, not deductible in full as a bad debt, but was a capital investment which increased the cost of petitioner's bank stock, and since the stock was bought in 1936, or *389 more than 24 months before the loss sustained, this increased cost is allowable as a long-term capital loss and to the extent of 50 percent in accord with section 117 (a)(5), and subsection (b). He has accordingly allowed $6,000 of the $12,000 claimed. Respondent argues that the advance did not create an unconditional obligation and therefore was not a "debt" within the meaning of the Act; and that even if it was, petitioner has not exhausted his remedy at law in attempting to collect it. We agree with the first contention of respondent and it is therefore unnecessary to discuss the second. It will be observed that petitioner's advances were to be received by the bank and credited to the bank's "Undivided Profits Account" (Article 2, 5; and that the payments were to be treated by the bank as "contributions" to the undivided profits. Such treatment was necessary, as petitioner's counsel admits, if the advances were to serve their purpose, for the Director of the Division of Banking of the State of Kentucky had made this amply clear. The principal purpose of the transaction was to increase the capital of the bank; not to merely increase the assets of the bank with a corresponding balancing *390 increase of its liabilities. As to the remedy for any possible recovery of his contributions for this purpose, petitioner was strictly limited. The directors agreed to make an assessment on the stockholders, but only if requested to do so by petitioner and the other contributors or a majority of them. The petitioner expressly waived his claim for repayment except from the proceeds of such an assessment or "out of net earnings, with the approval of the Director of the Division of Banking". This limitation left the petitioner no recourse against the assets of the bank in the event of its dissolution. Obviously, he was not a common and unconditional creditor. Unless the bank became prosperous again or unless a statutory assessment was levied against its stockholders, the petitioner had no claim whatever against it. Neither of these events happened. We are not concerned with the reasons why, but it seems clear from the testimony that petitioner and the other directors, including those making the advances, feared a ruinous run on the bank should resort be had to the statutory assessment. The advances, then, were made to a failing bank which might or might not recover; and since the remedy *391 of a statutory assessment was at all times thought too desperate, it may safely be said that the petitioner, at the time the advances were made, as well as later, must have looked solely to resuscitation of the moribund bank as the only means of repayment. Such being the case, it is hard to escape the conviction that he himself regarded the advances as contributions which might at some uncertain future time be converted into debts, upon contingencies which never transpired. But we are not bound by the petitioner's expectations or hopes and explore them merely for the light they may throw on the transaction. They do serve to confirm, however, the conviction which the words of the contract denote, that no fixed or certain obligation was created thereby. A "debt", we have said, construing the statutory provision, in Ambrose D. Henry, 8 B.T.A. 1089, affirmed 48 F.2d 459; is "that which one person is bound to pay to another". A debt, says Bouvier (Rawle's 3rd revision), citing Blackstone, 3 Com. 154, is "a sum of money due by certain and express agreement". Since, as we have said, there was no fixed obligation here, *392 and, by the nature of the transaction, none was contemplated, we can not allow its deduction as a "debt". Decision will be entered for the respondent.