EWALD SCHNEIDER and KATHARINA M. SCHNEIDER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
SCHNEIDER v. COMMISSIONER
Docket No. 10473-80.
United States Tax Court
T.C. Memo 1981-603; 1981 Tax Ct. Memo LEXIS 137; 42 T.C.M. (CCH) 1449; T.C.M. (RIA) 81603; October 19, 1981. Ewald Schneider, pro se. Mark D. Petersen, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: This case was assigned to and heard by Special Trial Judge Lee M. Galloway pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL *139 JUDGE GALLOWAY, Special Trial Judge: Respondent determined a deficiency of $ 540.04 in petitioners' 1976 Federal income tax. The issues [3] are whether petitioners are entitled to a bad debt deduction under section 166(d) as the result of a series of transactions pursuant to which petitioners advanced sums to a contractor to build a lake cottage, and (2) in the alternative, whether petitioners are entitled to a theft loss deduction arising from the same series of transactions pursuant to section 165(e)(3). FINDINGS OF FACT Some of the facts are stipulated and are so found. Petitioners filed a joint Federal income tax return for the taxable year 1976. Petitioners Ewald Schneider (hereinafter petitioner) and Katharina M. Schneider, were residents of Brookfield, Wisconsin, at the time their petition was filed. On November 20, 1972, petitioner entered into a contract in the amount of $ 21,000 with Hanson Contemporary Homes, *140 Inc. (Hanson Homes), to build a retirement lake cottage. Otto Hanson (Hanson) was the president and sole shareholder of Hanson Homes. The cottage was located on Lake Camelot near Wisconsin Rapids, Wisconsin, about 160 miles from petitioner's Brookfield home. Petitioner paid Hanson Homes $ 18,000 as advances on the construction contract, the last payment being made on February 17, 1973. Hanson Homes performed no work on the lake cottage after receiving the last payment. In the Spring of 1973, petitioner learned of construction problems with respect to the cottage that was being built by Hanson Homes. Petitioner hired an architectural and engineering firm to inspect the property. This firm determined that Hanson Home's cottage construction was faulty and that the contractor was guilty of numerous building code violations. Some of the work on the cottage was complete, even though improperly done. The foundation had been laid, the walls were up and the floors, windows, some of the doors, and some of the cabinets were in place. Petitioner hired another contractor in September 1973 and paid him $ 34,000 to repair the faulty construction and complete the cottage. Petitioner filed *141 an action for breach of contract in January 1974 against Hanson Homes, for $ 35,000 damages. Since the corporation had no funds, petitioner filed another action in July 1974 in Waukesha County Circuit Court against Otto Hanson, individually and as a responsible employee and officer of Hanson Homes, for $ 35,000 damages based on Hanson's negligence in the erection, supervision and control of the cottage construction. A default judgment by court was entered against Otto Hanson on September 27, 1974, in the negligence action filed by petitioner in the amount of $ 34,731 plus costs of $ 72.80 or a total of $ 34,803.80. Otto Hanson filed a petition for voluntary bankruptcy in the U.S. District Court, Eastern District of Wisconsin on December 19, 1974. Petitioner's judgment claim of $ 34,803.80 was listed on Schedule A-3 for creditors having unsecured claims without priority and described as "1973-Construction of Schneider house by petitioner-Judgment-Wausheka Co., Case #33117." Hanson was discharged as a bankrupt on March 20, 1975. Petitioner filed a proof of claim for $ 35,000 with the referee in bankruptcy on July 10, 1975. Petitioner received a first and final payment from the *142 referee in bankruptcy in the amount of $ 269.76 by check dated October 9, 1978. Petitioner has conceded that if he is entitled to a decision under section 166(d) or section 165(c)(3), the amount of deduction is limited to $ 13,450 ($ 18,000 less his estimated value of the services performed by Hanson, $ 4,550). OPINION (1) Bad Debt Deduction
Respondent has requested us to find that petitioner has not shown that there was a debtor-creditor relationship between petitioner and Hanson Homes or Otto Hanson; that assuming a debt was created, petitioner has not shown that the debt became worthless in the year 1976; that assuming a debt was created, petitioner has not established the amount of bad debt deduction to which he is entitled; and that the advances made by petitioner to Hanson Homes to construct a lake cottage were contributions to capital which were not deductible but rather increase the adjusted basis of petitioner's property. It is axiomatic that deductions are a matter of legislative grace and that the taxpayer has the burden of proving his entitlement to a deduction. *143 New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S. 111 (1933); Rule 142, Tax Court Rules of Practice and Procedure.Section 166(a)(1) allows "as a deduction any debt which becomes worthless within the taxable year." However, section 166(d)(1)(B), as applicable to the year 1976, limits the deduction of nonbusiness debts by treating the loss as the sale or exchange of a capital asset held for not more than six months. [4]Section 1.166-1(c), Income Tax Regs., provides that, "[o]nly a bona fide debt qualifies for purposes of section 166. A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. A gift or contribution to capital shall not be considered a debt for purposes of section 166." To determine whether a debtor-creditor relationship arose between petitioner and Hanson as a result of the transactions between these parties, we refer to Black's Law Dictionary, 5th Edition (1979), which *144 defines a debt as: A sum of money due by certain and express agreement. A specified sum of money owing to one person from another, including not only obligation of debtor to pay but right of creditor to receive and enforce payment. [Citations omitted.] A fixed and certain obligation to pay money or some other valuable thing or things, either in the present or in the future. In a still more general sense, that which is due from one person to another, whether money, goods, or services. In a broad sense, any duty to respond to another in money, labor, or service; * * *. See also Henry v. Burnet, 48 F.2d 459 (D.C. Cir. 1931), affg. 8 B.T.A. 1089 (1927). Petitioner can only prevail in his effort to show that a debtor-creditor relationship arose from his transactions with Hanson if we do not limit the definition of a "debt" to "[a] sum of money due by certain and express agreement." However, while an obligation was established between petitioner and Hanson in that Hanson had a legal duty to provide the necessary materials and services to complete the *145 construction of petitioner's cottage in return for the amount advanced by petitioner, this did not at that time establish the necessary debtor-creditor relationship to create a debt. Lewellyn v. Electric Reduction Co., 275 U.S. 243 (1927). At that time petitioner had a contract right to have the cottage completed by Hanson but Hanson had no express obligation to pay petitioner a fixed or determinable sum of money. The value of the materials and services provided by Hanson would enter into a calculation of Hanson's obligation to petitioner. Only when such obligation became fixed in fact and in amount, by judgment or otherwise, would a debt arise. We conclude that no bona fide debt arose solely as a result of Hanson's failure to provide the services and materials called for under the contract. We recognize that the year 1976 is before us and that Hanson's default may have given rise to a debt subsequent to his default in 1973 but prior to 1976. Petitioner, at trial, did not argue that his judgment for $ 34,803.80 against Hanson on September 27, 1974, created a debt. But even it if did, petitioner has not sustained his burden of proving that the debt became worthless *146 in 1976. Welch v. Helvering, supra.When a debt becomes worthless is a question of fact, which requires an examination of all the facts and circumstances. Boehm v. Commissioner, 326 U.S. 287 (1945); Dallmeyer v. Commissioner, 14 T.C. 1282 (1950). The date of worthlessness is fixed by identifiable events which form the basis of reasonable grounds for abandoning any future hope of recovery. United States v. White Dental Manufacturing Co., 274 U.S. 398 (1927). Section 1.166-2(c)(2), Income Tax Regs., provides as follows with respect to the year of deduction of a worthless debt. [i]n bankruptcy cases a debt may become worthless before settlement in some instances; and in others, only when a settlement in bankruptcy has been reached. In either case, the mere fact that bankruptcy proceedings instituted against the debtor are terminated in a later year, thereby confirming the conclusion that the debt is worthless, shall not authorize the shifting of the deduction under section 166 to such *147 later year. The facts here indicate that Hanson filed his petition in bankruptcy on December 19, 1974, and was discharged on March 20, 1975. Petitioner didn't file his proof of claim until July 10, 1975, and in October 1978 received his first and only check in the amount of $ 269.78 pursuant to the filing of the referee in bankruptcy's final account. It appears that petitioner hoped for a larger recovery from the bankruptcy assets based on the value of Hanson's exempt property over and above the $ 10,000 homestead exemption then in effect. Ultimately, the bankruptcy judge ruled in 1978 that since petitioner had failed to object to Hanson's discharge within the time fixed by the Court, he was entitled to no further recovery. Petitioner has furnished this Court with no evidence, aside from his bare assertion, that 1976 is the year in which the debt become worthless. Although petitioner argues on brief that 1976 is the proper year, he admitted at trial that in 1978 "I knew it was dead three years ago." (2) Theft Loss
Petitioner, at trial, raised the alternative contention that he is entitled to a theft deduction, pursuant to *148 section 165(c)(3), which allows a taxpayer a loss from theft during a taxable year to the extent that the theft loss exceeds $ 100. Prior to February 17, 1973, petitioner had advanced $ 15,000 to Hanson Homes in three checks of $ 5,000 each. As an inducement to secure the $ 3,000 advance dated February 17, 1973, Hanson signed two waivers of lien totaling $ 12,000. Petitioner argues that the unspent advance to Hanson of $ 3,000 as of February 17, 1973 and the $ 3,000 advanced by petitioner to Hanson on February 17, 1973, constitute sums ($ 6,000) that were obtained from petitioner by theft or false pretenses. Accordingly, petitioner should be entitled to a $ 6,000 deduction for theft as part of the $ 13,450 claimed loss. We find petitioner's argument unpersuasive. Section 1.165-8(d), Income Tax Regs., provides that "the term 'theft' shall be deemed to include, but shall not necessarily be limited to, larceny, embezzlement and robbery." However, for tax purposes, whether a theft loss has occurred depends upon the *149 law of the jurisdiction where the loss transaction occurred. Monteleone v. Commissioner, 34 T.C. 688 (1960). Wis. Stat. Ann. sec. 943.20(1) (d) (West 1958), provides as follows: Obtain[ing] title to property of another by intentionally deceiving him with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made [constitutes theft]. "False representation" includes a promise made with intent not to perform it if it is a part of a false and fraudulent scheme. In the case at issue, petitioner did not bring a criminal action against Hanson. Petitioner testified that "[m]y attorney told me it's very hard to establish a case of fraud or anything like this." As we view the evidence, Hanson may have been negligent and unqualified to perform this job, but there is no evidence of fraud. Petitioner himself testified that Hanson "might have had the best intention to build the house, but I think he was just not able to do it." Apparently, Hanson had not constructed a home previously and was "over his *150 head" on this project. On his bankruptcy petition, Hanson indicated that he had been unemployed since December 1973, had a $ 534 business loss in 1973 and no business gain or loss in 1974. Although it is clear that some of petitioner's advances may have been used by Hanson as personal expenditures in 1973 and 1974, petitioner has not proved the facts and circumstances necessary to show that Hanson took the advances by false pretenses. Petitioner's reliance on Hartley v. Commissioner, T.C. Memo. 1977-317 is misplaced. In Hartley, it was proven that the contractor made false representations to the taxpayer for the purpose of receiving cash advances to secure materials to construct the taxpayer's house. The taxpayer had to personally pay for the materials the contractor charged, without paying for, in order to release liens from his property. Further, in Hartley, the contractor left the state, had to be extradited to Nebrasks and finally filed a voluntary petition in bankruptcy to which the taxpayer objected based on a civil judgment which the taxpayer claimed was based on the obtaining of his money through false and fraudulent statements. In the instant *151 case, petitioner stated that he never saw Hanson again after the February 17, 1973, payment of $ 3,000. Petitioner never approached Hanson about the unfinished work or requested repayment of the advances. Hanson continued to live in the area until filing his petition in bankruptcy on December 19, 1974. Respondent also argues that petitioner failed to prove the year in which the theft loss, if any is deductible, occurred. We are inclined to agree. A theft loss shall be treated as sustained during the taxable year in which the taxpayer discovers the loss unless there exists a claim for reimbursement with respect to which there is a reasonable prospect for recovery. Sec. 1.165-1(d)(3), Income Tax Regs. Petitioner discovered Hanson's default in 1973 and has offered no evidence that any reasonable prospect for reimbursement ceased in 1976. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. We assume that other adjustments to petitioners' income contained in the statutory deficiency notice for business expense and sales tax have been abandoned by petitioners since neither issue was mentioned at trial or in the parties' briefs.↩
4. Petitioner reported the claimed loss of $ 18,000 as a short-term capital loss.↩