H. FORT FLOWERS FOUNDATION, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2982–77.    Filed June 4, 1979.

*Richard R. Hollington, Jr.,* and *Jackson E. Betts,* for the petitioner.

*Buckley D. Sowards,* for the respondent.

HALL, *Judge:* Respondent determined deficiencies in initial excise tax under section 4942(a)[1] and additional excise tax under section 4942(b) for failure to distribute income, plus additions to the tax under section 6651(a)(1), for petitioner as follows:

| Year | Initial tax sec. 4942(a) | Additional tax sec. 4942(b) | Addition to tax sec. 6651(a)(1) |
| --- | --- | --- | --- |
| 1972 | $6,200.07 | $41,333.83 | $1,550.02 |
| 1973 | 7,774.29 | 10,494.74 | 1,943.57 |
| 1974 | 10,184.54 | 16,068.38 | 2,546.13 |

[1] All statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue.

In 1965, petitioner made a large charitable contribution to a university. In order to make this contribution, petitioner used a "loan" from its corpus to its income account. Petitioner allocated its income for 1970 through 1973 to restoration of its corpus. The issues for decision are:

(1) Whether petitioner is liable for the initial 15-percent excise tax, imposed on the undistributed income of a private foundation, provided in section 4942(a);

(2) Whether petitioner is liable for the 100-percent additional excise tax on undistributed income under section 4942(b);

(3) Whether petitioner is liable for additions to tax under section 6651(a)(1) for failure to file Forms 4720 (excise taxes) for the years in issue.

## FINDINGS OF FACT

Most of the facts have been stipulated by the parties and are found accordingly.

Petitioner is a corporation not-for-profit organized under the laws of the State of Delaware; its principal office is in Findlay, Ohio. Petitioner is a private foundation within the meaning of section 509(a); petitioner is not a private operating foundation.

Petitioner was created in 1951 by H. Fort Flowers. The purpose for which petitioner was organized and for which it operates is to use its funds exclusively for educational, charitable, religious, scientific, or literary purposes. Petitioner's bylaws, which were adopted in 1951 and have been unchanged since that time, provide for the distribution of trust corpus only if certain procedures are followed:[2]

22. No part of the principal of the funds of the corporation shall be distributed except pursuant to a resolution, passed by the affirmative vote of a majority of the Board of Trustees, at a regular or special meeting held on not less than 5 days' notice given in writing to each member of the board which shall state that the meeting is called for the purpose of considering a resolution to authorize the distribution of some part of theprincipal [sic] of its funds, reserves, contributions, surplus, beneficial endowments, or other designated property or asset.

In 1965, petitioner contributed $200,000 in cash to Vanderbilt University to be used for construction of a library. The library

---

[2]Petitioner's bylaws did not contain any provision prohibiting borrowing from its corpus.

was dedicated by the University in 1969 and is known as the H. Fort Flowers Memorial Library. In 1965, petitioner's current and accumulated income totaled only $35,023.65. Petitioner's trustees decided not to make the remainder of the contribution to Vanderbilt ($164,976.35) out of principal but to make it out of future income. The board specifically did not follow the procedures in its bylaws pursuant to which a distribution of principal could be made. In 1965 and succeeding years, petitioner treated the $200,000 contribution as a distribution of net accumulated income in 1965, current income from 1965, and future income. Petitioner treated the contribution as an advance from principal; petitioner has never treated this contribution as a distribution of principal. On its information return filed in 1965, petitioner showed a contribution of $200,000 and a negative aggregate accumulation of income of ($164,976.35). From 1965 through 1973, all of petitioner's income, with the exception of small charitable contributions, was applied to restoration of petitioner's principal. Petitioner's corpus was fully restored in 1973. The remaining income from 1973 was distributed in 1974 for charitable purposes. Petitioner's income for 1974 was distributed for charitable purposes in 1975. Petitioner's trustees believed that they had to use the income in 1966 through 1973 to restore corpus in order to prevent a retroactive conversion of the 1965 gift into a gift from corpus. However, nothing in petitioner's certificate of incorporation, bylaws, or Ohio law prevented petitioner from distributing its corpus in the amounts required to avoid the taxes imposed by section 4942.

When petitioner's trustees agreed to "borrow" from the foundation's corpus in 1965 to make the contribution to Vanderbilt, they had no tax motives in mind. If the trustees in 1965 had been aware of the Tax Reform Act which Congress would pass in 1969, the trustees, rather than borrowing from principal, would have borrowed formally from a lending institution and made formal arrangements to repay the loan.

In 1975, petitioner made a qualifying distribution within the meaning of section 4942(g) in the amount of $102,184, which exceeded the aggregate amount of the alleged underdistributions set forth in the notice of deficiency for the 1972, 1973, and 1974 years with respect to 1970 through 1973. On its 1975 Form 990–PF, petitioner corrected any prior underdistributions of income by electing to treat the 1975 $102,184 distribution as

being made out of any undistributed income of 1970 through 1973. The election provided as follows:

It is possible that the IRS will prevail in disallowing the application of the following earnings to a gift of $200,000 made in 1965 to Vanderbilt University and authorized by the Trustees with the understanding that *all* of the gift borrowed from Corpus was to be replaced by earnings from subsequent years: 1970–$13,417.38; 1971–$27,916.45; 1972–$10,494.74; 1973–$16,068.38. (Total $67,897.95). If, and only if, the IRS should prevail, H. Fort Flowers Foundation, Inc. elects to have $67,897.95 of 1970 to 1973 earnings applied to 1975 qualifying distributions.

Petitioner's Forms 990–A for 1966 and 1969 and Form 990 for 1970 were audited by respondent and accepted as filed. Respondent acknowledged the propriety of petitioner's method of applying current income to repay the portion of the 1965 contribution that was "borrowed" from principal. The report for 1969 and 1970, which was mailed on April 11, 1972, stated:

In 1970, the undistributed income was $13,837.38 as determined in accordance with section 4942. But a review of the Foundation's distributions for the five prior years, indicates an excess distribution of $78,109.20. Therefore, the Foundation will not be required to distribute the $13,837.38 in the 1971 tax year.

Petitioner relied on respondent's position as expressed in the audit in not filing Forms 4720 for the years 1972 through 1977. Petitioner's failure to file Forms 4720 for 1972, 1973, and 1974 was due to reasonable cause and not due to willful neglect.

In the statutory notice, respondent determined that petitioner was subject to both the initial and additional excise taxes imposed by section 4942, as well as additions to the tax for failure to file Forms 4720 for all the years in issue. In calculating the tax, respondent determined that petitioner's undistributed income was as follows:

| Year | 1970 | 1971 | 1972 | 1973 | 1974 |
|---|---|---|---|---|---|
| Undistributed income | $13,417.38 | $27,916.45 | $10,494.74 | $16,068.38 | $34,287.54 |

Respondent then cumulated this undistributed income and applied the 15-percent tax rate as follows:

| Undistributed income: | 1972 | 1973 | 1974 |
|---|---|---|---|
| Cumulative 1970–71 | $41,333.83 | | |
| Cumulative 1970–72 | | $51,828.57 | |
| Cumulative 1970–73 | | | $67,896.95 |

Initial tax—15 percent
of undistributed income .. $6,200.07... $7,774.29 ... $10,184.54

## OPINION

The first issue for decision is whether petitioner is liable for the initial 15-percent excise tax provided in section 4942(a).[3] The primary contention between the parties is whether petitioner's allocation of its income in 1970 through 1973 to restoration of its corpus constitutes a "qualifying distribution" within the meaning of section 4942.

Section 4942 is part of the complex and detailed statutory provisions of the Tax Reform Act of 1969[4] (hereinafter Tax Reform Act) which were designed to combat the abuses which Congress felt existed in the formation and operation of exempt organizations. Prior to the enactment of section 4942, the Internal Revenue Code provided that a private foundation would lose its tax-exempt status if its aggregate accumulated income was "unreasonable in amount or duration in order to carry out the charitable, educational, or other purpose or function constituting the basis for exemption under section 501(a) of an organization described in section 501(c)(3)." Former section 504(a)(1), repealed by section 101(j)(15) of the Tax Reform Act of 1969 (Pub. L. 91–172, 83 Stat. 487, 527). In its report, the Senate Finance Committee stated as the reasons for the change:

*General reasons for change.*—Under present law, if a private foundation invests in assets that produce no current income, then it need make no distributions for charitable purposes. As a result, while the donor may receive substantial tax benefits from his contribution currently, charity may receive absolutely no current benefit. In other cases, even though income is produced by the assets contributed to charitable organizations, no current distribution is required until the accumulations become "unreasonable." Although a number of court cases have begun to set guidelines as to the circumstances under which an accumulation becomes unreasonable, in many cases the determination is essentially subjective. Moreover, as is the case with self-dealing, it frequently

---

[3] In relevant part, sec. 4942(a) provides:

(a) INITIAL TAX.—There is hereby imposed on the undistributed income of a private foundation for any taxable year, which has not been distributed before the first day of the second (or any succeeding) taxable year following such taxable year (if such first day falls within the taxable period), a tax equal to 15 percent of the amount of such income remaining undistributed at the beginning of such second (or succeeding) taxable year. * * *

[4] Pub. L. 91–172, 83 Stat. 487.

happens that the only available sanction (loss of exempt status) either is largely ineffective or else is unduly harsh.

The committee has concluded that substantial improvement in the present situation can be achieved by providing sanctions if income is not distributed currently. A graduation of sanctions, designed to produce current benefits to charity, is provided. [S. Rept. 91–552, p. 35 (1969), 1969–3 C.B. 423, 446, 447.]

Generally stated, section 4942 requires that certain private foundations make a minimum level ("distributable amount") of charitable contributions ("qualifying distributions"). The distributable amount is the higher of the "minimum investment return" (as defined) or the "adjusted net income" (as defined), minus certain adjustments. In this case, respondent determined, and petitioner does not contest, that in each year its adjusted net income exceeded the minimum investment return and hence constituted the distributable amount. There is imposed an initial tax of 15 percent (the "initial tax") of any part of the distributable amount remaining undistributed at the beginning of the second taxable year (and each succeeding taxable year) following the year with respect to which the distributable amount was computed. Once the 15-percent initial tax has been imposed with respect to a failure to distribute the distributable amount from a prior year or years, an additional tax of 100 percent (the "additional tax") is imposed on any part of the distributable amount from such prior years which remains undistributed at the end of a prescribed period ("correction period"). Prior to expiration of the correction period underdistributions from prior years may be corrected without imposition of the 100-percent additional tax by making the required distributions.

## I. *Initial Tax*

In this case, the specific issue is whether petitioner's allocation of its income to restoration of its corpus constitutes a "qualifying distribution" for purposes of this section. In 1965, petitioner made a large contribution to Vanderbilt University; this contribution exceeded petitioner's current and accumulated income. Petitioner, however, for accounting purposes, did not make the balance of this contribution ($164,976.35) out of principal but chose to make this contribution from future income. Petitioner's trustees believed that they had obtained a "loan" from petitioner's corpus to fund this contribution. Accordingly, petitioner

consistently used its income to restore its corpus until the entire "loan" was repaid in 1973.

Petitioner contends that its allocation of income to restoration of principal constitutes a qualifying distribution as described in sec. 53.4942(a)-3(a)(4)(ii)($a$), Foundation Excise Tax Regs. Respondent, on the other hand, contends that this regulation is inapplicable to petitioner and, in the alternative, that petitioner failed to elect the benefits of this provision.

In general, if a private foundation borrows money in a particular year for charitable purposes, a qualifying distribution with respect to the borrowed funds is made only at the time that such borrowed funds are distributed for an exempt purpose. Sec. 53.4942(a)–3(a)(4)(i), Foundation Excise Tax Regs. However, there is a special provision for funds borrowed prior to 1970:

(ii) *Funds borrowed before 1970.* (a) If a private foundation has borrowed money in a taxable year beginning before January 1, 1970, or subsequently borrows money pursuant to a written commitment which was binding as of the last day of such taxable year, to make expenditures for a specific charitable, educational, or other similar exempt purpose, if such borrowed funds are in fact expended for such purpose in any taxable year, and if such loan is thereafter repaid, in whole or in part, in a taxable year beginning after December 31, 1969, then, at the election of the foundation as provided in subdivision (ii)(b) of this subparagraph, a qualifying distribution will be deemed to have been made at such time or times that such loan principal is so repaid rather than at the earlier time that the borrowed funds were actually distributed for such exempt purpose.

Sec. 53.4942(a)-3(a)(4)(ii)($a$), Foundation Excise Tax Regs. See also example *(4)*, sec. 53.4942(a)–3(a)(8), Foundation Excise Tax Regs. We must decide whether petitioner's action—taking a "loan" from corpus—is within the scope of this regulation. Specifically, we must decide whether petitioner "borrowed money" when it made its contribution to Vanderbilt University.

We do not agree with petitioner's characterization of its distribution from capital as a loan from corpus. In order to have a loan there must be an agreement whereby one person advances money to another person who agrees to repay it on such terms as the parties may agree. 47 Ohio Jur. 2d Restitution sec. 6; *Kasch v. Miller*, 104 Ohio St. 281, 135 N.E. 813 (1922). Petitioner cannot borrow from itself notwithstanding the fact that State law and petitioner's bylaws require petitioner to account separately for income and principal. Petitioner's alleged borrowing is not a loan under Ohio law and not a loan for tax purposes. Cf. *Henry v.*

*Commissioner*, 8 B.T.A. 1089, 1097 (1927), affd. 48 F.2d 459 (D.C. Cir. 1931). Without a loan, section 53.4942(a)–3(a)(4)(ii)(*a*), Foundation Excise Tax Regs., is not applicable to petitioner. Since petitioner did not borrow funds before 1970, we need not decide whether petitioner properly elected under subdivision (ii)(*b*) of section 53.4942(a)–3(a)(4)(ii)(*b*) to come under subdivision (ii)(*a*).

Petitioner next contends that if its repayment of principal out of income earned in 1970 through 1973 does not qualify as a "loan" as used in section 53.4942(a)–3(a)(4), Foundation Excise Tax Regs., then section 4942 and such regulations are unconstitutional as applied to petitioner because they deny petitioner the equal protection of the laws and the due process of law guaranteed by the Fifth Amendment. Petitioner argues that no rational, constitutional distinction can be drawn between petitioner's "loan" from corpus and the loan from a commercial bank involved in example (*4*), sec. 53.4942(a)–3(a)(8), Foundation Excise Tax Regs. Since this argument is based upon petitioner's erroneous characterization of its donation to Vanderbilt University out of capital as a "loan" from itself to itself, it is without merit.

Section 101(k) of the Tax Reform Act which added section 4942 to the Code provided that the provisions of section 4942 would apply to taxable years beginning after December 31, 1969. Section 101(1) of the Act contains savings provisions designed to safeguard those organizations which were in existence before May 27, 1969, and which were unable to comply with the provisions of section 4942 due to legal disability or binding contracts entered into prior to that date. None of these savings provisions apply to petitioner's so-called "loan" from capital.

Petitioner has argued several other alternative positions based on its premise that the contribution to Vanderbilt University was made not out of corpus but out of future income. Having decided that petitioner cannot borrow from itself, the alternative arguments based on the "loan" theory also fail.

Congress could have permitted an offset for prior distributions whether out of capital or out of "future income" in defining impermissible post–1969 income accumulations. It did not, however, do so, and petitioner may not achieve the substance of such an offset by its own internal accounting conventions or by virtue of local law characterizations. The fact

is, petitioner had income during the years in issue which it retained and did not pay out. Congress did not see fit to excuse such failure because of prior distributions, however large, and it is not for us to rewrite the statute.

Petitioner finally argues that if the initial tax is due, and we so hold, the liability for such tax does not arise until January 1 of the second year (1972) following the year in which the income was earned (1970). Therefore, the tax would be due with respect to such second year (1972) and would not be payable until on or before May 15 of the third year (1973). Respondent contends that if the distributable amount earned in 1970 is not distributed before the close of 1971, the foundation is required to file Forms 990–PF and 4720 for 1971, and pay the tax on or before May 15, 1972. While the statute is not clear, we conclude that respondent is correct. Congress recognized that it would not be practical to require that a private foundation pay out its distributable amount (whether this was based on actual or imputed income) in the year in which it was derived since the amount required to be distributed could not be determined precisely in many instances until after the close of the year. Thus, foundations were allowed an additional year in which to satisfy this distribution requirement. When the requisite distributions are not made by the end of that year, a tax liability under section 4942(a) arises at that time. We see no evidence that Congress intended, as petitioner contends, that the foundation be allowed 17½ months to file the return and pay this tax without penalty, and commonsense indicates that Congress would not subvert its own objective by allowing a longer time than reasonably necessary.

## II. *Additional Tax*

Petitioner alleges that it corrected the underdistribution of 1970 through 1973 income by its election to apply the 1975 excess distribution to any underdistribution of income for 1970 through 1973. That election was made on petitioner's 1975 Form 990–PF, which was signed by a foundation manager and stated:

It is possible that the IRS will prevail in disallowing the application of the following earnings to a gift of $200,000 made in 1965 to Vanderbilt University and authorized by the Trustees with the understanding that *all* of the gift borrowed from Corpus was to be replaced by earnings from subsequent years: 1970–$13,417.38; 1971–$27,916.45; 1972–$10,494.74; 1973–$16,068.38. (Total $67,897.95). If, and only if, the IRS should prevail, H. Fort Flowers Foundation,

Inc. elects to have $67,897.95 of 1970 to 1973 earnings applied to 1975 qualifying distributions.

The treatment of a qualifying distribution in 1 taxable year as being made out of undistributed income of a designated prior taxable year is expressly permitted by section 4942(h)(2), which provides:

(2) CORRECTION OF DEFICIENT DISTRIBUTIONS FOR PRIOR TAXABLE YEARS, ETC.—
In the case of any qualifying distribution which (under paragraph (1)) is not treated as made out of the undistributed income of the immediately preceding taxable year, the foundation may elect to treat any portion of such distribution as made out of the undistributed income of a designated prior taxable year or out of corpus. The election shall be made by the foundation at such time and in such manner as the Secretary or his delegate shall by regulations prescribe.

Section 53.4942(a)–3(d)(2), Foundation Excise Tax Regs., prescribed the following procedure for making the election under section 4942(h)(2):

(2) *Election.* In the case of any qualifying distribution which (under subparagraph (1) of this paragraph) is not treated as made out of the undistributed income of the immediately preceding taxable year, the foundation may elect to treat any portion of such distribution as made out of the undistributed income of a designated prior taxable year or out of corpus. Such election must be made by filing a statement with the Commissioner during the taxable year in which such qualifying distribution is made or by attaching a statement to the return the foundation is required to file under section 6033 with respect to the taxable year in which such qualifying distribution was made. Such statement must contain a declaration by an appropriate foundation manager (within the meaning of section 4946(b)(1)) that the foundation is making an election under this subparagraph, and it must specify whether the distribution is made out of the undistributed income of a designated prior taxable year (or years) or is made out of corpus. In any case where the election described in this subparagraph is made during the taxable year in which the qualifying distribution is made, such election may be revoked in whole or in part by filing a statement with the Commissioner during such taxable year revoking such election in whole or in part or by attaching a statement to the return the foundation is required to file under section 6033 with respect to the taxable year in which the qualifying distribution was made revoking such election in whole or in part. Such statement must contain a declaration by an appropriate foundation manager (within the meaning of section 4946(b)(1)) that the foundation is revoking an election under this subparagraph in whole or in part, and it must specify the election or part thereof being revoked. For purposes of elections made under this subparagraph, see sec. 1.9100–1 relating to extensions of time for making certain elections.

Respondent contends that petitioner's conditional election did not constitute a valid election within the meaning of section

4942(h)(2) and the applicable regulations because the election became effective only in the year in which it was determined that the initial tax under section 4942(a) applied to the undistributed income of petitioner for 1970 through 1973, which will be the year in which this decision becomes final.

We find petitioner's election clear and appropriate. There is no doubt what petitioner intended. Since petitioner cannot know until this case becomes final whether a correcting distribution is needed, the election is appropriately tailored to the problem it is intended to correct. Petitioner should not be forced to make an absolute election to correct a possible but not certain underdistribution in an earlier year until that underdistribution has been established.

Even if the 1975 election were invalid, petitioner cannot be found liable in this case for the 100-percent additional tax. In *Adams v. Commissioner*, 72 T.C. 81 (1979), we held that there is no deficiency with respect to the additional tax because the correction period has not yet expired. The correction period does not end until the Court's decision on the initial tax becomes final. No additional tax can be imposed until that time. Thus, no deficiency exists with respect to the additional tax.

### III. *Addition to Tax for Failure To File Forms 4720*

Petitioner argues that the additions to tax under section 6651(a) should not be applied to it for its failure to file Forms 4720[5] because such failure to file was due to reasonable cause. First, petitioner claims that under its good faith construction of the law it did not believe it was required to file Forms 4720. It also points to the complexity of the statutory provisions which were relatively new in the years in question. Moreover, petitioner claims it relied on audits by respondent with respect to 1966, 1969, and 1970 in which respondent's agents acknowledged the propriety of petitioner's method of applying current income to repay portions of the 1965 contribution that were "borrowed" from principal. The audit report for 1969 and 1970 which was mailed to petitioner on April 11, 1972, stated:

In 1970, the undistributed income was $13,837.38 as determined in accordance with section 4942. But a review of the Foundation's distributions for the

---

[5]Form 4720 is a return of initial excise tax on private foundations, foundation managers and disqualified persons, under secs. 4941–4945.

five prior years, indicates an excess distribution of $78,109.20. Therefore, the Foundation will not be required to distribute the $13,837.38 in the 1971 tax year.

Not until the audit of the years in issue commenced in 1975 did respondent indicate to petitioner that respondent had changed his earlier view and would impose an initial tax on petitioner. While respondent is not bound by the erroneous advice given by his revenue agents (*Darling v. Commissioner*, 49 F.2d 111, 113 (4th Cir. 1930), cert. denied 283 U.S. 866 (1931); *Martin's Auto Trimming, Inc. v. Riddell*, 283 F.2d 503, 506 (9th Cir. 1960)), it was not unreasonable for petitioner to rely on such advice in not filing Forms 4720 for the years in issue.

We conclude that petitioner's failure to file Forms 4720 was due to reasonable cause and not due to willful neglect. Therefore, petitioner is not liable for the additions to tax for failure to file Forms 4720 for 1972, 1973, and 1974.

*Decision will be entered under Rule 155.*