STANLEY O. MILLER CHARITABLE FUND, STANLEY O.
MILLER, TRUSTEE, PETITIONERS *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 9888-86.          Filed December 7, 1987.

*Joseph D. Hartwig,* for the petitioner.
*Roberta M. Hamm,* for the respondent.

### OPINION

FEATHERSTON, *Judge*: Respondent determined the following deficiencies in petitioner's excise taxes under section 4942(a): [1]

| Period ended Sept. 30— | Amount |
| --- | --- |
| 1981 | $40,619.44 |
| 1982 | 59,254.12 |
| 1983 | 59,254.12 |
| 1984 | 59,254.12 |

Respondent also determined that petitioner is liable for a second-tier deficiency in excise taxes in the amount of $395,027.44 under section 4942(b); however, the parties have stipulated that, because of distributions made before the end of a statutory correction period, petitioner is not liable for this section 4942(b) amount.

The issues for decision are whether, for the periods ended September 30, 1981, through September 30, 1984, in computing undistributed income on which the tax under section 4942(a) is imposed, the amount thereof should be reduced for long-term capital losses and for short-term capital losses

---

[1] All section references are to the Internal Revenue Code of 1954, in the form in effect for the years in issue, unless otherwise noted.

in excess of capital gains, and, if not, whether the section 4942(a) tax violates various provisions of the United States Constitution.

All the facts are stipulated.

Petitioner Stanley O. Miller Charitable Fund is a trust, and its sole trustee is Stanley O. Miller. The principal office of the trustee at the time of the filing of the petition in this case was St. Joseph, Michigan.

Stanley O. Miller established petitioner pursuant to a trust agreement executed on September 30, 1953. Created solely for charitable, educational, scientific, religious, or literary purposes and for the benefit of the public welfare, petitioner is a private foundation. The record does not show that, during the periods in issue, petitioner was a private operating foundation within the meaning of section 4942(a)(1).

In 1954, the Internal Revenue Service (IRS) granted petitioner exempt status under 1939 Code section 101(6), the predecessor of section 501(c)(3). Petitioner disburses funds to charitable and educational organizations, primarily in the areas of St. Joseph and Benton Harbor, Michigan.

The facts on which the case turns can best be understood in the light of a brief summary of the controlling statutory provisions. Section 4942, on which respondent relies to support the determined deficiency, is part of the complex and detailed provisions of the Tax Reform Act of 1969 "which were designed to combat the abuses which Congress felt existed in the formation and operation of exempt organizations." *H. Fort Flowers Foundation, Inc. v. Commissioner*, 72 T.C. 399, 404 (1979). Subsection (a) of that section, with certain exceptions which are not here relevant, imposes a first-level excise tax measured by the undistributed income of private foundations as follows:

SEC. 4942(a). INITIAL TAX.—There is hereby imposed on the undistributed income of a private foundation for any taxable year, which has not been distributed before the first day of the second (or any succeeding) taxable year following such taxable year (if such first day falls within the taxable period), a tax equal to 15 percent of the amount of such income remaining undistributed at the beginning of such second (or succeeding) taxable year. * * *

Under this section, the tax is imposed unless income of one year is distributed before the end of the next succeeding year. The "tax is imposed for each year until the private foundation is notified [by the IRS] of its obligation [to make distributions] or until the foundation itself corrects its earlier failure by making the necessary payouts"; if, after notification by the IRS, the required "distributions are not made within the appropriate period, the second level of sanctions is imposed—a tax of 100% of the amount required to be paid out." H. Rept. 91-413, 1969-3 C.B. 200, 218; S. Rept. 91-552, 1969-3 C.B. 423, 448.[2]

For purposes of section 4942, "undistributed income" is the amount by which the "distributable amount" for the taxable year exceeds the "qualifying distributions"[3] made out of the distributable amount. Sec. 4942(c). The term "distributable amount" means (a) for taxable years beginning before January 1, 1982, an amount equal to the greater of the "minimum investment return"[4] or the "adjusted net income,"[5] reduced by the sum of certain taxes (including the

---

[2] As indicated above, respondent has conceded that petitioner made sufficient distributions within the appropriate period to avoid the imposition of the second level of sanctions (the determined deficiency of $395,027.44).

[3] Sec. 4942(g)(1) provides as follows:

SEC. 4942(g). QUALIFYING DISTRIBUTIONS DEFINED.—

    (1) IN GENERAL.—For purposes of this section, the term "qualifying distribution" means—
        (A) any amount (including that portion of reasonable and necessary adminstrative expenses) paid to accomplish one or more purposes described in sec. 170(c)(2)(B), other than any contribution to (i) an organization controlled (directly or indirectly) by the foundation or one or more disqualified persons (as defined in sec. 4946) with respect to the foundation, except as provided in paragraph (3), or (ii) a private foundation which is not an operating foundation (as defined in subsection (j)(3)), except as provided in paragraph (3), or
        (B) any amount paid to acquire an asset used (or held for use) directly in carrying out one or more purposes described in sec. 170(c)(2)(B).

[4] Sec. 4942(e)(1) provides as follows:

SEC. 4942(e). MINIMUM INVESTMENT RETURN.—

    (1) IN GENERAL.—For purposes of subsection (d), the minimum investment return for any private foundation for any taxable year is 5 percent of the excess of—
        (A) the aggregate fair market value of all assets of the foundation other than those which are used (or held for use) directly in carrying out the foundation's exempt purpose, over
        (B) the acquisition indebtedness with respect to such assets (determined under sec. 514(c)(1) without regard to the taxable year in which the indebtedness was incurred).

[5] Sec. 4942(f) provides in part as follows:

SEC. 4942(f). ADJUSTED NET INCOME.—

    (1) DEFINED.—For purposes of subsection (j), the term "adjusted net income" means the excess (if any) of—
        (A) the gross income for the taxable year (determined with the income modifications provided by paragraph (2)), over

ones imposed under section 4942) that may be imposed on the foundation; and (b) for taxable years beginning after December 31, 1981, an amount equal to the minimum investment return reduced by the sum of taxes listed that may be imposed on the foundation. Sec. 4942(d); sec. 53.4942(a-2(b)(1)(i) and (ii), Excise Tax Regs.

In general, any qualifying distribution made during the taxable year is treated as made first out of the undistributed income of the immediately preceding taxable year[6] (if the private foundation was subject to the initial excise tax imposed by section 4942(a) for such preceding taxable year) to the extent thereof, then out of the undistributed income for the taxable year to the extent thereof, and finally out of corpus. Sec. 4942(h).

The following table shows petitioner's distributable amounts, its qualifying distributions, and the amounts remaining undistributed for the taxable periods ended September 30, 1980, and September 30, 1981:

### Sept. 30, 1980

| | |
|---|---|
| Distributable amount | $734,915.32 |
| Less qualifying distributions: | |
| Before Sept. 30, 1980 | 294,268.12 |
| Before Sept. 30, 1981 | 169,850.93 |
| Income not distributed before Sept. 30, 1981 | 270,796.27 |

### Sept. 30, 1981

| | |
|---|---|
| Distributable amount | 202,984.57 |
| Less qualifying distributions | 78,753.39 |
| Income not distributed before Sept. 30, 1982 | 124,231.18 |

---

(B) the sum of the deductions (determined with the deduction modifications provided by paragraph (3)) which would be allowed to a corporation subject to the tax imposed by sec. 11 for the taxable year.

(2) INCOME MODIFICATIONS.—The income modifications referred to in paragraph (1)(A) are as follows:

\*      \*      \*      \*      \*      \*      \*

(B) capital gains and losses from the sale or other disposition of property shall be taken into account only in an amount equal to any net short-term capital gain for the taxable year;

[6]In the case of any qualifying distributions which are not treated as made out of the undistributed income of the immediately preceding taxable year, the foundation may elect to treat any portion of such distributions as made out of the undistributed income of a designated prior taxable year or out of corpus. The election shall be made by the foundation at such time and in such manner as the Secretary shall by regulations prescribe. Sec. 4942(h)(2), quoted in note. 8 *infra.*

For the periods ended September 30, 1982, 1983, and 1984, respectively, petitioner made qualifying distributions which exceeded the distributable amounts by $78,609.54, $149,822.02, and $82,417.88.[7] Petitioner did not, however, elect under section 4942(h)(2)[8] to have these excess qualifying distributions carried back and treated as made out of its undistributed income for the periods ended September 30, 1980, and September 30, 1981, and does not here contend that they should be so treated.

Petitioner does not dispute the correctness of the amounts respondent used in computing this excise tax deficiency. Petitioner, however, contends that for the 4-year period covered by the taxable years September 30, 1981, through September 30, 1984, it made charitable contributions in an amount in excess of its net income as follows:

| Year | Net income[1] | Contributions | Excess of net income over contributions |
|---|---|---|---|
| 1981 | $353,384 | $169,000 | $184,384 |
| 1982 | (352,803) | 78,500 | (431,303) |
| 1983 | 154,468 | 132,500 | 21,988 |
| 1984 | 88,675 | 171,600 | (82,925) |
| Total | 243,724 | 551,600 | |

[1]These figures were arrived at by taking into account long-term and short-term capital gains and losses.

---

[7]The details are as follows:

*Sept. 30, 1982*

| | |
|---|---|
| Distributable amount | $54,407.67 |
| Less qualifying distributions before Sept. 30, 1983 | 133,017.21 |
| Excess distributions | 78,609.54 |

*Sept. 30, 1983*

| | |
|---|---|
| Distributable amount | 101,565.13 |
| Less qualifying distributions: | |
| Carryover from 1983 qualifying distributions | 78,609.54 |
| Distributed before Sept. 30, 1984 | 172,777.61 |
| Excess distributions | 149,882.02 |

*Sept. 30, 1984*

| | |
|---|---|
| Distributable amount | 67,404.14 |
| Less excess qualifying distributions carryover | 149,882.02 |
| Excess distributions | 82,417.88 |

[8]Sec. 4942(h)(2) provides as follows:

(2) CORRECTION OF DEFICIENT DISTRIBUTIONS FOR PRIOR TAXABLE YEARS, ETC.—In the case of any qualifying distribution which (under paragraph (1)) is not treated as made out of the undistributed income of the immediately preceding taxable year, the foundation may elect to treat any portion of such distribution as made out of the undistributed income of a designated prior taxable year or out of corpus. The election shall be made by the foundation at such time and in such manner as the Secretary shall by regulations prescribe.

Petitioner's computations of its net income for this period reflect a net short-term loss of $212,741 and a net long-term capital loss of $188,214, both for 1982. Petitioner contends that it had no income from which to make the distributions asserted by respondent to be required by section 4942. The issue thus presented is to what extent should capital losses be taken into account in computing the "undistributed income of a private foundation" on which the excise tax is imposed by section 4942(a).

Before the enactment of section 4942, section 504 governed the charitable distribution requirements for private foundations. Section 504 provided in relevant part that the tax-exempt status of a private foundation would be revoked if its accumulated income was "unreasonable in amount or duration in order to carry out the [foundation's] charitable purpose." Because of the severity of this sanction, section 504 was rarely invoked by the IRS and was, therefore, inadequate to insure that funds contributed to foundations (for which an immediate tax deduction was obtained by the donors) flowed out of the foundations to charities and to the general public in a timely manner. To rectify this problem, the Tax Reform Act of 1969 repealed section 504 and enacted section 4942. H. Rept. 91-413, 1969-3 C.B. 200, 216-218; S. Rept. 91-552, 1969-3 C.B. 423, 446-447; *Leckie Scholarship Fund v. Commissioner,* 87 T.C. 251, 255-256 (1986); *H. Fort Flowers Foundation, Inc. v. Commissioner,* 72 T.C. 399, 404-405 (1979).

Section 4942 established a minimum mandatory payout requirement for all private nonoperating foundations. Specifically, in order to avoid the imposition of the tax under that section, a private nonoperating foundation was required, in general terms, to make qualified distributions (i.e., expenditures or grants for charitable purposes) equal to the greater of (1) the adjusted net income of the foundation, determined with certain income modifications, or (2) the minimum investment return of the foundation (calculated as a percentage of the value of the foundation's noncharitable investment assets) less any acquisition indebtedness incurred with respect to such assets. See notes 3, 4, 5, and 8, *supra,* and related text. One of the income modifications applicable in determining adjusted net income, used in

computing the determined deficiency, is prescribed by section 4942(f)(2)(B) as follows:

(B) capital gains and losses from the sale or other disposition of property shall be taken into account only in an amount equal to any net short-term capital gain for the taxable year;

See also sec. 53.4942(a)-2(d)(2)(ii), Excise Tax Regs. Thus, the statute permits short-term capital losses to be taken into account only in an amount equal to any net short-term capital gains for the taxable year; it provides no adjustment for long-term capital gains or losses. Sec. 53.4942(a)-2(d)(2)(ii), Excise Tax Regs. Petitioner's net short-term capital loss of $212,741 and net long-term capital loss of $188,214 for the period ended September 30, 1982, may not therefore be taken into account in computing petitioner's adjusted net income for the purpose of computing its undistributed income within the meaning of section 4942(a).

Petitioner, at least implicitly, recognizes that the literal language of section 4942 compels the conclusion that petitioner's capital losses for the period ended September 30, 1982, may not be taken into account, except as indicated, in determining the applicability of the tax. Petitioner argues, however, that Congress somehow forgot that some foundations are trusts rather than corporations and, as a result, failed to distinguish between trusts and corporations in defining adjusted net income in section 4942(f). Petitioner urges the Court to correct the failure of Congress to make this distinction.

There is no merit in petitioner's argument. It is true that one purpose of Congress in enacting section 4942 was to require private foundations to distribute their income currently. But Congress was aware that a foundation could easily skirt a requirement that it currently distribute its income by investing in growth stocks or similar investments that appreciate over time but produce little current income. H. Rept. 91-413, 1969-3 C.B. 200, 216-218; S. Rept. 91-552, 1969-3 C.B. 423, 446-447. In such circumstances, donors could enjoy income tax deductions for their contributions to the foundations but nothing would go to charitable purposes. Accordingly, section 4942(d), in the form effective for taxable periods beginning before December 31, 1981, as

noted above, defines "distributable amount" to mean an amount equal to the greater of the minimum investment return or the adjusted net income reduced by certain taxes. The minimum investment return is defined to mean 5 percent of the excess of the fair market value of the foundation's noncharitable assets over the acquisition indebtedness with respect to such assets. Sec. 4942(e).

Section 4942 was thus designed to deal with the perceived abuse of the exempt status of private foundations by imposing a tax on the greater of the adjusted net income actually received by the foundation and what was regarded as a reasonable return on the foundation's assets. Quite clearly, the perceived abuse of a foundation's exempt status could be committed as easily by a trust as by a corporation and the remedy provided by section 4942, considered in the light of petitioner's argument, was as effective and as reasonable for one as the other.[9] We think it is quite clear that Congress was fully aware that some foundations were trusts and some were corporations.

Petitioner makes four arguments that section 4942 is unconstitutional. Petitioner first argues that by enacting section 4942 Congress has exceeded its power under section 8, clause 1 of article I of the United States Constitution. That clause authorizes Congress to lay and collect excise taxes, among others, to pay the public debt, and provide for the common defense and general welfare. Petitioner contends that section 4942 does not impose a tax for the purpose specified by section 8, article I of the United States Constitution, but the section imposes a penalty measured by a prescribed rate of return on the value of the foundation's noncharitable property even though the foundation may have no income. Petitioner cites the following statement from S. Rept. 91-552, 1969-3 C.B. 423, 447:

---

[9]Among other provisions designed to deal with private foundation abuses adopted as part of the Tax Reform Act of 1969 were excise taxes on self-dealing (sec. 4941), excess business holdings (sec. 4943), investments which jeopardize a foundation's charitable purpose (sec. 4944), and taxable expenditures (sec. 4945). The definitions and special rules in sec. 4946 for the application of the Code subchapter of which sec. 4946 is a part refer to trusts as well as corporations and partnerships. Indeed, sec. 4947 deals specifically with the application of the taxes to certain nonexempt trusts.

The committee has concluded that substantial improvement in the present situation can be achieved by providing sanctions if income is not distributed currently. * * *

The Supreme Court has repeatedly rejected this argument. In *United States v. Sanchez*, 340 U.S. 42 (1950), involving a tax on marijuana, the Court stated (pp. 44-45):

It is beyond serious question that a tax does not cease to be valid merely because it regulates, discourages, or even definitely deters the activities taxed. *Sonzinsky v. United States*, 300 U.S. 506, 513-514 (1937). The principle applies even though the revenue obtained is obviously negligible, *Sonzinsky v. United States, supra,* or the revenue purpose of the tax may be secondary, *Hampton & Co. v. United States*, 276 U.S. 394 (1928). Nor does a tax statute necessarily fall because it touches on activities which Congress might not otherwise regulate. As was pointed out in *Magnano Co. v. Hamilton*, 292 U.S. 40, 47 (1934):

"From the beginning of our government, the courts have sustained taxes although imposed with the collateral intent of effecting ulterior ends which, considered apart, were beyond the constitutional power of the lawmakers to realize by legislation directly addressed to their accomplishment."

These principles are controlling here. The tax in question is a legitimate exercise of the taxing power despite its collateral regulatory purpose and effect.

This reasoning requires rejection of petitioner's argument.[10]

Next, petitioner argues that "Since the tax imposed by section 4942, taxes either the income from property or even

---

[10]In *Rockefeller v. United States*, 572 F. Supp. 9 (E.D. Ark. 1982), affd. per curiam 718 F.2d 290 (8th Cir. 1983), the taxpayer alleged that sec. 4941 was an unlawful extension of constitutional taxing power under sec. 8, clause 1 of art. I of the United States Constitution because the purpose of sec. 4941 was to regulate private foundations and not to raise revenue. Recognizing that the distinction between regulatory and revenue-raising tax statutes had been rejected by the Supreme Court and citing *United States v. Kahriger*, 345 U.S. 22, 31 (1953), the District Court stated that tax statutes are constitutional unless they contain provisions which are extraneous to any tax need. The court concluded (572 F. Supp. at 13):

"It is clear that section 4941 is constitutional as measured by the standards set forth in *Kahriger*. Congress has seen fit, in enacting the internal revenue laws, to grant tax exempt status to certain entities. Additionally, Congress has allowed individuals, corporations and estates the right to escape taxation of the amounts donated for charitable purposes. 26 U.S.C. sections 170, 642(c), 2055 and 2522. However, when Congress observed that its legislative grace was being abused, it enacted section 4941 to insure that its original intent in granting non-taxable status was complied with. Although section 4941 has a regulatory effect on the activities of charitable organizations and might not raise any revenue, it insures that revenue will be collected under income, estate, and gift tax laws which otherwise might have gone uncollected."

In *Bob Jones University v. Simon*, 416 U.S. 725, 741 n. 12 (1974), the Court stated that: "It is true that the Court [in early cases] * * * drew what it saw at the time as distinctions between regulatory and revenue-raising taxes. But the Court has subsequently abandoned such distinctions."

the property itself, in the absence of income equal to the statutory minimum return of 5 percent of the value of the property, it is submitted, that this Section 4942 violates Section 9 of Article 1" in that it is a "direct tax" which is not apportioned among the several States in proportion to population. To support his argument, petitioner cites *Pollock v. Farmers' Loan & Trust Co.*, 157 U.S. 429 (1895), modified 158 U.S. 601 (1895), where the Income Tax Act of 1894 imposed a tax on income from real and personal property. The Court held that the tax was on the property itself, and as such was unconstitutional as a direct tax subject to the apportionment requirement of section 9, clause 4 of article I. As respondent points out, however, the Court in *Pollock* stated that it was not commenting "on so much of [the income tax law] as bears on gains or profits from business, privileges, or employments, in view of the instances in which taxation on business, privileges, or employments has assumed the guise of an excise tax and been sustained as such." 158 U.S. at 635. See also *Flint v. Stone Tracy Co.*, 220 U.S. 107 (1911) (corporate excise tax sustained even though part of the income was derived from property). Thus, the *Pollock* case is inapposite because section 4942 imposes an excise tax with respect to the use of property by an organization which has been granted exemption from income taxes. The tax is designed to prevent the abuse of that exemption. *Rockefeller v. United States*, 572 F. Supp. 9, 13 (E.D. Ark. 1982), affd. per curiam 718 F.2d 290 (8th Cir. 1983).

Furthermore, the Supreme Court has consistently held that a tax imposed upon a particular use of property or the exercise of a single power over property incidental to ownership is an excise tax which need not be apportioned. *Bromley v. McCaughn*, 280 U.S. 124, 136 (1929) (upholding the gift tax). The income from petitioner's property or the value of its property plays a role in determining the imposition and amount of the section 4942 tax; however, the tax is imposed in specific circumstances and not because of petitioner's ownership of the property. A private foundation can have substantial income and still not be taxed under section 4942 as long as it makes sufficient qualifying distributions. Thus, not being a tax on a private

foundation's general ownership of property, the section 4942 tax is not a direct tax.

Petitioner further asserts that section 4942 violates the Fifth Amendment of the Constitution. On brief, petitioner states that "By decreeing that private foundation trusts have income when, in fact, they have losses, which exceed their gross income, the Congress mandated the distribution of trust corpus or principal." Petitioner argues that this distribution of trust corpus or principal is a deprivation or confiscation of property without due process of law. We do not agree.

Petitioner's argument, again, overlooks the fact that petitioner enjoys the privilege of income tax exemption accorded by section 501(c)(3). True, under section 4942, a private foundation may be faced with a choice of paying the excise tax or distributing to charity in a single year a sum equal to 5 percent of its net equity in its noncharitable property even though it has no income for that year. By enacting section 4942, however, Congress decided to subject tax-exempt private foundations to that choice in order to deal with what it perceived to be an abuse of the foundation's tax-exemption privilege. While donors to the exempt private foundation could receive substantial current tax benefits from their contributions, charity might receive no current benefits because the foundation invested in growth assets that produce no current income but are expected to increase in value.

In our view, subjecting private foundations to this choice does not constitute the taking of their property without due process of law. Congress quite clearly could have conditioned the continuation of the section 501(c)(3) income tax exemption privilege on a requirement that the foundation annually make distributions equal to 5 percent of the value of its noncharitable assets. Such a condition would not constitute the taking of property without due process of law. Similarly, we see no reason why Congress cannot subject an income-tax-exempt foundation to the choice of paying the section 4942 tax, making the prescribed distribution or, if it chooses, forfeiting its income tax exemption because section 4942 applies only to an income-tax-exempt

foundation.[11] Cf. *Adams v. Commissioner,* 70 T.C. 373 (1978), affd. per order (2d Cir., Mar. 18, 1982).

Petitioner's final argument is that "the imposition of a tax at the rate of 5% of a private foundation violates the Sixteenth Amendment of the Constitution." The 16th Amendment grants to Congress the power "to lay and collect taxes on incomes, from whatever sources derived, without apportionment among the several States." Section 4942 tax is not an income tax; it is an excise tax measured by the extent to which a tax-exempt foundation fails to disburse its statutorily defined distributable amount; hence, petitioner's 16th Amendment argument is irrelevant.

We have no alternative but to sustain the 15-percent tax imposed by section 4942(a) for failure to distribute income as determined by respondent.

To reflect the foregoing,

*Decision will be entered under Rule 155.*

---

[11]We do not mean to imply that a foundation may escape a sec. 4942 tax already incurred by forfeiting its tax exemption.