Winthrop P. ROCKEFELLER, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. LR C 81 775.

United States District Court, E.D. Arkansas, W.D.

Dec. 10, 1982.

Charles C. Owen, Rose Law Firm, Little Rock, Ark., for plaintiff.

Lawrence Sherlock, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## ORDER

OVERTON, District Judge.

This is an action for the recovery of taxes and interest assessed against and paid by the plaintiff pursuant to 26 U.S.C. § 4941(a)(1). The parties have entered into a stipulation of fact and have agreed to present the case to the Court on the following issues: (1) whether 26 U.S.C. § 4941 is constitutional; (2) whether Treas.Reg. Sec. 53–4941(d)–1(b)(3) is constitutional; (3) whether plaintiff is a disqualified person under § 4941; and (4) whether the exactions assessed against the plaintiff pursuant to § 4941(a)(1) are penalties, not taxes, for the purpose of computing interest on the exactions. The parties also submitted the issue of whether plaintiff is entitled to attorney's fees to the Court; however, they have subsequently agreed that plaintiff is not entitled to those fees. The Court concurs.

### Background Facts

On February 22, 1973, Winthrop Rockefeller died. Pursuant to the terms of his Last Will and Testament, dated November 14, 1972, he left the residue of his estate to a charitable trust created under his Will. The Will contemplated that certain properties known as Winrock Farms would constitute a substantial part of the residue and would compose a substantial part of the trust.

On September 30, 1975, plaintiff, the son of Winthrop Rockefeller, and the executor of the estate of Winthrop Rockefeller, entered into an agreement wherein plaintiff agreed to purchase all of the stock of Winrock Farms. The plaintiff and the estate obtained an independent appraisal of the fair market value of the Winrock Farms' stock, and petitioned the Probate Court of Conway County, Arkansas, (the probate court having jurisdiction over the proceedings of the estate), for approval of the sale. The Probate Court entered an order approving the sale at the appraised fair market value, and plaintiff purchased the stock at that value on December 19, 1975.

After auditing the estate's 1975 tax return, the Internal Revenue Service issued a report which proposed certain adjustments in the estate's tax return. The proposed adjustments were based on certain findings of fact, one of which was that the sale of the stock to the plaintiff was not at fair market value. The Regional Office of Appeals of Service, in Oklahoma City, Oklahoma, rejected this proposed finding of fact and adjustment and recommended that the sale of stock be examined as a possible violation of 26 U.S.C. § 4941.

After conducting an investigation of the Estate's 1976 tax return and the information return of the Trust u/w Winthrop Rockefeller, on October 10, 1979, the IRS mailed plaintiff a "30 day letter" which proposed deficiencies under § 4941(a)(1). Section 4941(a)(1) imposes a "tax" on each act of self dealing between a disqualified person and a private foundation. The Commissioner of the IRS determined that the trust was a private foundation, that plaintiff was a disqualified person with respect to the trust and that plaintiff's purchase of the Winrock Farms' stock was an act of indirect self dealing between plaintiff and the trust. In determining that transactions between the plaintiff and the estate constituted an act of self dealing, the Commissioner relied on the definition of self dealing in § 4941(d)(1), which includes indirect sales between a disqualified person and a private foundation, and Treas.Reg. § 53.-4941(d)–1(b)(3). That Treasury Regulation covers transactions during the administration of an estate or revocable trust. It provides in relevant part that the term "indirect self dealing" does not include a transaction with respect to a private foundation's interest or expectancy in property held by an estate, regardless of when title vests under local law, as long as the following criteria are met: (1) the administrator or executor of an estate must have the

power to sell or reallocate the property in question, if it is subject to an option, (2) the transaction must have been approved by the probate court or by another court having jurisdiction over the property, (3) the transaction must occur before the estate is considered terminated for federal income tax purposes, (4) the estate must receive an amount which equals or exceeds the fair market value of the foundation's interest or expectancy in such property at the time of the transaction, and (5) the transaction must result in the foundation receiving an interest or expectancy at least as liquid as the one it gave up. The IRS Commissioner found that plaintiff had not paid the estate the fair market value of the property and, thus, had engaged in an act of indirect self dealing with the trust.

On December 10, 1979, the plaintiff timely filed a protest contesting the proposed deficiencies. Almost one year later, after several conferences with an appeals officer in the IRS's office of the Regional Director of Appeals, plaintiff and the Commissioner of Internal Revenue executed Form 906, Closing Agreement on Final Determination Covering Specific Matters. Pursuant to the terms of the closing agreement, plaintiff and the Commissioner conceded that the fair market value of the Winrock Farms' stock was greater than the amount paid to the estate, but less than the amount proposed in the IRS's 30 day letter. The plaintiff also agreed to pay the IRS $2,067,-558.95, which encompassed $341,865 in taxes imposed by the IRS under 26 U.S.C. § 4941(a)(1) for each of the calendar years of 1975 through 1980, plus $358,233.95 in interest. However, plaintiff reserved the right to recover these amounts in litigation. The plaintiff and the Commissioner agreed to limit the bases for any such litigation to the validity and/or applicability of 26 U.S.C. § 4941 and the regulations promulgated thereunder, and the question of whether the amount imposed by § 4941(a)(1) is a penalty in which the Service may not assess and collect any interest under 26 U.S.C. § 6601 if that amount is not paid within 10 days of notice and demand for payment of Service.

In December of 1980, plaintiff mailed the IRS a check for the total amount allegedly owed through calendar year 1979. In May, 1981, he sent the IRS a check for the amount assessed against him for the calendar year 1980. In the Spring of 1981, plaintiff filed claims for refund with the IRS for the years 1975 through 1980, inclusive, which were denied on September 30, 1981. Plaintiff filed suit on November 5, 1981.

I. 26 U.S.C. § 4941 is a constitutional exercise of congressional taxing power.

Section 4941 is a part of the Tax Reform Act of 1969 and is an amendment to a piece of tax legislation which exempts certain organizations from taxation. Section 4941 imposes a "tax" on each act of self dealing between a disqualified person and a private foundation. The "tax" is assessed against the participating disqualified person (the self dealer) and is 5% of the amount involved, with respect to the act of self dealing for each year (or part thereof) in the taxable period. If the act of self dealing is not corrected, a penalty equal to 200% of the amount involved is imposed on the self dealer.

Prior to the Tax Reform Act of 1969, 26 U.S.C. § 503 imposed arm's length standards to certain types of self dealing between organizations described in § 501(c)(3), which includes what is now defined as private foundations, and certain individuals. The remedies available to the Internal Revenue Service upon violation of § 503 were revocation of the organization's tax exempt status for a minimum of one taxable year, and denial of the donor's charitable contribution deduction. See, 26 U.S.C. § 504 (Repealed 1969). However, Congress observed that there were many abuses in the enforcement and utilization of § 503. In order to minimize the need to apply subjective standards, to avoid the temptation to use private foundations for noncharitable purposes, to provide a rationale relationship between sanctions and improper acts and to make it more practical to enforce the law, Congress enacted 26 U.S.C.

§ 4941. S.Rep. No. 91–552, 91st Cong., 1st Sess. 28, *Reprinted in* 1969 U.S.Code Cong. & Ad.News 1663, 1665.

Plaintiff contends that § 4941 is an unconstitutional extension of congressional taxing power under Art. 1, § 8, Clause 1 of the United States Constitution. He specifically contends that the purpose of § 4941 is not to raise revenue, but to regulate private foundations by imposing penalties on individuals who use them for noncharitable purposes. He also asserts that § 4941 is an arrogation of the State of Arkansas' right to regulate charities, which was reserved to the state by the Tenth Amendment to the United States Constitution.

■ In early decisions which analyzed the constitutionality of tax statutes, the Court often drew distinctions between regulatory and revenue raising taxes. See, *Bailey v. Drexel Furniture Co. (Child Labor Tax Case),* 259 U.S. 20, 42 S.Ct. 449, 66 L.Ed. 817 (1922); *Hill v. Wallace,* 259 U.S. 44, 42 S.Ct. 453, 66 L.Ed. 822 (1922); and *Helmig v. United States,* 188 U.S. 605, 23 S.Ct. 427, 47 L.Ed. 614 (1903). However, the Court has subsequently abandoned such distinctions. In its brief opinion in *United States v. Sanchez,* 340 U.S. 42, 44–45, 71 S.Ct. 108, 109–110, 95 L.Ed. 47 (1950), the Court stated:

It is beyond serious question that a tax does not cease to be valid merely because it regulates, discourages, or definitely deters the activity taxed. *Sonzinsky v. United States,* 300 U.S. 506, 513–514 [57 S.Ct. 554, 555, 556, 81 L.Ed. 772] (1937). The principle applies even though the revenue obtained is obviously negligible, *Sonzinsky v. United States, supra,* or the revenue purpose of tax may be secondary. *Hampton & Co. v. United States,* 276 U.S. 394 [48 S.Ct. 348, 72 L.Ed. 624] (1928). Nor does a tax statute necessarily fall because it touches on activities which Congress may not otherwise regulate. . . .

Under the present posture of the law, tax statutes are constitutional unless they contain provisions which are extraneous to any tax need. *United States v. Kahriger,* 345 U.S. 22, 31, 73 S.Ct. 510, 514, 97 L.Ed. 754 (1953).

■ It is clear that § 4941 is constitutional as measured by the standards set forth in *Kahriger.* Congress has seen fit, in enacting the internal revenue laws, to grant tax exempt status to certain entities. Additionally, Congress has allowed individuals, corporations and estates the right to escape taxation of the amounts donated for charitable purposes. 26 U.S.C. §§ 170, 642(c), 2055 and 2522. However, when Congress observed that its legislative grace was being abused, it enacted § 4941 to insure that its original intent in granting non-taxable status was complied with. Although § 4941 has a regulatory effect on the activities of charitable organizations and might not raise any revenue, it insures that revenue will be collected under income, estate, and gift tax laws which otherwise might have gone uncollected.

II. Treas.Reg. Sec. 53.4941(d)–1(b)(3) is constitutional.

Plaintiff's next contention is that even if Section 4941 is constitutional, Treas.Reg. Sec. 53.4941(d)–1(b)(3), which interprets that section of the Internal Revenue Code, is unconstitutional. Plaintiff asserts that there are three constitutional deficiencies in Treas.Reg. Sec. 53.4941(d)–1(b)(3).

First, he alleges that the treasury regulation is an impermissible extension of § 4941 because Congress never intended for § 4941 to encompass transactions between estates and disqualified persons. In support of his contention, plaintiff argues that the language of the statutes which are the subject matter of this litigation are completely devoid of any references to estates. He points out that § 4941(d), which defines self dealing, only refers to transactions between disqualified persons and private foundations and never mentions estates. He also points out that an estate is not a private foundation as described in § 501(c)(2), or a charitable trust as described in § 4947. He further argues that the legislative history of § 4941 indicates that the statute was not intended to cover transactions with estates.

He notes that one of the principal purposes of Congress in implementing § 4941 was to obviate the problem of equitable administration and enforcement of the arm's length standards of § 503. S.Rep. No. 91–552, 91st Cong., 1st Sess. 28, *Reprinted in* 1969 U.S. Code Cong. & Ad.News 1663, 1664. He reasons that the corrective measures of § 4941 were unnecessary with respect to estates because there are sufficient checks under the status quo which protect the property in an estate, such as estate tax laws, other legatees, devisees and creditors under the decedent's will, laws imposing personal liability upon executors and administrators for breach of their fiduciary duty, and laws requiring administrators and executors to receive advance approval from the probate court before consummating transactions with the estate.

▮ The authority of the Secretary of Treasury to administer the internal revenue statutes and to prescribe rules and regulations to that end is beyond question. 26 U.S.C. § 7805(a). However, that power is limited to the adoption of *reasonable* regulations which will effectuate the will of Congress as expressed by the statute. *Manhattan General Equipment Co. v. Commissioner of Internal Revenue,* 297 U.S. 129, 56 S.Ct. 395, 80 L.Ed. 528 (1936). Treas. Reg. § 53.4941(d)–1(b)(3) is both consistent with 26 U.S.C. § 4941 and reasonable.

Congress had numerous objectives in enacting § 4941, and was not solely concerned with the equitable administration and enforcement of the arm's length standards of § 503. Another purpose of § 4941 was to prevent disqualified persons who were in literal compliance with § 503 from surreptitiously using private foundations for their own benefit. S.Rep. No. 91–552, 91st Cong., 1st Sess. 28, *Reprinted in* 1969 U.S. Code Cong. & Ad.News 1663, 1667. It logically follows that Congress would be concerned about the circumvention of an estate's assets which are earmarked for a private foundation, especially in a case such as this, where the bulk of the estate is bequeathed to a charitable trust. It is also reasonable to subject such an estate, in part, to the statutory checks which Congress has deemed fit for private foundations.

It should also be noted that the fact that Congress failed to mention the word estate in § 4941, or related statutes, is not determinative of the constitutionality of Treas. Reg. Sec. 53.4941(d)–1(b)(3). That regulation was promulgated to interpret the term "self dealing", which is broadly defined under § 4941(d)(1)(A) as any direct or indirect sale, exchange or lease of property between a private foundation and a disqualified person. In similar circumstances, where the Courts have been called upon to determine the constitutionality of regulations which interpret statutes which are couched in general terms, as in § 4941(d)(1)(A), courts have deferred to the regulation as long as it implements the Congressional mandate in a reasonable manner. *See, United States v. Cartwright,* 411 U.S. 546, 93 S.Ct. 1713, 36 L.Ed.2d 528 (1973) and *National Muffler Dealers Assn. v. United States,* 440 U.S. 472, 99 S.Ct. 1304, 59 L.Ed.2d 519 (1979). This Court defers to Treas.Reg. Sec. 53.-4941(d)–1(b)(3).

Second, plaintiff alleges that Treas.Reg. Sec. 53.4941(d)–1(b)(3) is arbitrary, unreasonable and vague. He asserts that the treasury regulation is arbitrary in that it only covers sales and exchanges and excludes all other transactions. He asserts that the treasury regulation is unreasonable because it encompasses transactions in which "disqualified persons" do not intentionally manipulate the assets of an estate, which will flow to a private foundation, for their own benefit. He also asserts that the treasury regulation's subjective requirements regarding liquidity and fair market value, and its negative statement of the definition of the term "indirect self dealing", make the regulation unconstitutionally vague.

▮ Plaintiff's assertion that the treasury regulation is unconstitutionally arbitrary and unreasonable is without merit. The essence of plaintiff's argument is that the treasury regulation is unfair because it does not solve every problem which might

arise in the estate context. The incomprehensiveness of the treasury regulation violates no constitutional mandate. Although the Court concedes that improvement might be made in the regulation, it also notes that it does not have authority to sit as a committee of revision to perfect the administration of the tax laws. Congress has delegated to the Commissioner of the Internal Revenue Service, not the courts, the task of prescribing "all needful rules and regulations for the enforcement" of the Internal Revenue Code. 26 U.S.C. § 7805(a). In this area of limitless factual variations, "it is the province of the Congress and the Commissioner, not the courts, to make the appropriate adjustments." *Commissioner v. Stidger,* 386 U.S. 287, 296, 87 S.Ct. 1065, 1071, 18 L.Ed.2d 53 (1966). The role of the judiciary in cases of this sort begins and ends with assuring that the Commissioner's regulations fall within his authority to implement the Congressional mandate in a reasonable manner. *Manhattan General Equipment Co. v. Commissioner, supra.* The regulation has not been shown to be deficient on that score; therefore, it must be upheld.

Likewise, plaintiff's assertion that the treasury regulation is unconstitutionally vague has no merit. The test of vagueness is whether men of common intelligence must guess at its meaning. *Connally v. General Construction Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1925). Laws that have failed to meet this standard are, almost without exception, those which turn on language calling for the exercise of subjective judgment, unaided by objective norms. E.g., *United States v. L. Cohen Grocery Co.,* 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516 ("unreasonable charges"); *Winters v. New York,* 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 ("so massed as to become vehicles for inciting"); *Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 ("sacrilegious"). No such language is found in the treasury regulation.

Plaintiff also alleges that the treasury regulation unconstitutionally attempts to impose federal regulation of activities subject only to state regulation, i.e., probate administration. He reasons that since it is improper for Congress to legislate the conduct of estate administration, it is equally, if not more, improper for the Internal Revenue Service to attempt supervision of estates by regulation. This contention must also fail, because it is based on an erroneous premise. A tax statute is not constitutionally infirm merely because it touches on activities Congress may not otherwise regulate. *United States v. Sanchez,* 340 U.S. 42, 45, 71 S.Ct. 108, 110, 95 L.Ed. 47 (1950). As long as a regulation is reasonable and effectuates the will of Congress as expressed by the statute, it must be sustained. *Manhattan General Equipment v. Commissioner,* 297 U.S. 129, 56 S.Ct. 397, 80 L.Ed. 528 (1936). Treas.Reg. § 53–4941(d)–1(b)(3) meets that standard.

III. Plaintiff is a disqualified person with respect to the trust.

Section 4941 imposes a tax on each act of self dealing between a disqualified person and a private foundation. Section 4946 of the Internal Revenue Code defines the term "disqualified person" and reads, in part, as follows:

(a) *Disqualified Person.—*

(1) In general.—For purposes of this subchapter, the term "disqualified person" means, with respect to a private foundation, a person who is—

(A) a substantial contributor to the foundation

\* \* \* \* \* \*

(D) a member of the family (as defined in subsection (d) of any individual described in subparagraph (A), (B), or (C).

(2) *Substantial contributors.—*

For purposes of paragraph (I), the term "substantial contributor" means a person who is described in Section 507(d)(2)

\* \* \* \* \* \*

(d) *Members of Family.—*For purposes of subsection (a)(1), the family of an individual shall include only his spouse,

ancestors, lineal descendants, and spouses of lineal descendants.

Section 507(d) of the Code, which is referred to in the definition of substantial contributor, provides, in part, as follows:

For purposes of Paragraph (1), the term "substantial contributor" means the person who contributed or *bequeathed* an aggregate amount of more than $5,000.00 to the private foundation, if such amount is more than 2 percent of the total contributions and bequests received by the foundation before the close of the taxable year of the foundation in which the contribution or bequest is received by the foundation from such person. *In the case of a trust, the term substantial contributor also means the creator of the trust.* (Emphasis added.)

Plaintiff contends that he is not a disqualified person with respect to the trust because his deceased father does not fall within the definition of substantial contributor under § 4946. He alleges that since § 7701(a)(1) defines a person as an individual, estate or trust, the reference in § 4946(a)(2) to "a person described in § 507(d)(2)" contemplates only living persons and existing entities. Plaintiff also implies that § 507(d)(2) should not be used to define "disqualified person" because the impact of § 507(d) is to recoup the tax benefits which had accrued to the foundation and to its past substantial contributors, not to control the relationship between disqualified persons and private foundations.

The Court finds that plaintiff falls within the definition of "disqualified person". He is a member of the family, i.e., a lineal descendant, of a substantial contributor to the trust. Plaintiff's suggestion that it is inappropriate to use § 507(d)(2) to define "disqualified person" is unsupported. The face of the statute clearly indicates that Congress intended that section to apply, as written, to § 4946(a)(1), regardless of its function elsewhere in the Code. Section 507(d)(2) clearly contemplates that a decedent can be a substantial contributor since a bequest is expressly considered to be a contribution. In addition, § 507(d)(2) provides that in case of a trust, the creator is deemed a substantial contributor. There can be no doubt that plaintiff's father, although deceased, is a substantial contributor with respect to the trust within the meaning of § 4946.

IV. Section 4941(a) is a penalty for the purpose of assessing interest.

Pursuant to plaintiff's settlement agreement with the government, he paid $358,233.95 in interest which was assessed pursuant to § 6601(a) of the Internal Revenue Code. That section provides that interest shall be charged on any amount/tax from the last date prescribed for payment to the date actually paid. Plaintiff contends that he is entitled to a refund of interest because § 4941(a)(1) imposes a penalty, not a tax, and because he has complied with § 6601(e)(3), which governs interests on penalties. Section 6601(e)(3) provides that interest shall be imposed on an assessable penalty only if the penalty is not paid within ten days of the issuance of notice and demand for the payment of the assessment. It is undisputed by the parties that plaintiff paid the amounts assessed under § 4941(a) within 10 days of demand and notice.

This Court ruled that § 4941 was penalty for the purpose of assessing interest in *Farrell v. United States,* 484 F.Supp. 1097 (E.D. Ark.1980). Defendant has advanced no new argument to persuade the Court that its decision was erroneous.

Judgment will be entered in favor of the plaintiff and against defendant for $358,233.95.