Stephen B. Niswanger Williams and Anderson PLC 111 Center Street Little Rock, AR 72201
Dear Mr. Niswanger:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the following popular name and ballot title for a proposed initiated act:
 Popular Name The Arkansas Medical Marijuana Act Ballot Title AN ACT PROVIDING THAT A "QUALIFYING PATIENT" OR "PRIMARY CAREGIVER" POSSESSING A REGISTRY IDENTIFICATION CARD ISSUED BY THE ARKANSAS DEPARTMENT OF HEALTH (THE "DEPARTMENT") SHALL NOT BE SUBJECT TO ARREST, PROSECUTION, OR PENALTY IN ANY MANNER FOR ENGAGING IN OR ASSISTING WITH THE "MEDICAL USE" OF MARIJUANA BY THE "QUALIFYING PATIENT," PROVIDED THAT THE AMOUNT OF MARIJUANA COLLECTIVELY POSSESSED BETWEEN THE "QUALIFYING PATIENT" AND "PRIMARY CAREGIVER," IF ANY, DOES NOT EXCEED SIX MARIJUANA PLANTS AND ONE OUNCE OF" USABLE MARIJUANA"; A PERSON MAY ASSERT THE "MEDICAL USE" OF MARIJUANA AS A DEFENSE TO PROSECUTION INVOLVING MARIJUANA, REGARDLESS OF WHETHER THE PERSON POSSESSES A REGISTRY IDENTIFICATION CARD, IF THE PERSON IS A "PRIMARY CAREGIVER" OR "QUALIFYING PATIENT," AND THE "QUALIFYING PATIENT" AND" PRIMARY CAREGIVER," IF ANY, COLLECTIVELY POSSESSED NO MORE MARIJUANA THAN WAS REASONABLY NECESSARY TO ENSURE THE UNINTERRUPTED AVAILABILITY OF MARIJUANA TO ALLEVIATE THE SYMPTOMS OR EFFECTS OF A "DEBILITATING MEDICAL CONDITION";" QUALIFYING PATIENT" IS DEFINED AS A PERSON DIAGNOSED BY A LICENSED ARKANSAS PHYSICIAN AS HAVING A "DEBILITATING MEDICAL CONDITION," WHICH INCLUDES CANCER, CLAUCOMA, HIV, AIDS, A CHRONIC OR DEBILITATING DISEASE OR MEDICAL CONDITION THAT PRODUCES SEVERE PAIN OR OTHER CIRCUMSTANCES DESCRIBED IN THE ACT, OR ANY OTHER MEDICAL CONDITION OR TREATMENT APPROVED BY THE STATE BOARD OF HEALTH (THE" BOARD"), WHICH SHALL PROMULGATE REGULATIONS WITHIN NINETY DAYS AFTER THE EFFECTIVE DATE OF THIS ACT GOVERNING ITS CONSIDERATION OF PETITIONS TO ADD DEBILITATING MEDICAL CONDITIONS TO THOSE IN THE ACT; "MEDICAL USE" IS DEFINED AS ACQUISITION, POSSESSION, CULTIMATION, MANUFACTURE, USE, DELIVER, "TRANSFER," OR TRANSPORTATION OF MARIJUANA OR RELATED PARAPHERNALIA TO ALLEVIATE THE SYMPTOMS OR EFFECTS OF A QUALIFYING PATIENT'S DEBILITATING MEDICAL CONDITION, WHERE "TRANSFER" IS DEFINED AS TRANSFER OF MARIJUANA AND PARAPHERNALIA BETWEEN A QUALIFYING PATIENT AND "PRIMARY CAREGIVER"; "PRIMARY CAREGIVER" IS DEFINED AS SOMEONE AT LEAST EIGHTEEN YEARS OLD, NEVER CONVICTED OF A FELONY DRUG OFFENSE, WHO AGREES TO MANAGE THE WELL-BEING OF A PERSON WITH RESPECT TO THE MEDICAL USE OF MARIJUANA; A QUALIFYING PATIENT MAY HAVE ONLY ONE PRIMARY CAREGIVER AT ANY ONE TIME, AND THE PRIMARY CAREGIVER MAY RECEIVE REASONABLE COMPENSATION FOR SERVICES PROVIDED; "USABLE MARIJUANA" IS DEFINED AS ANY MIXTURE OF PREPARATION OF DRIED LEAVES AND FLOWERS OF MARIJUANA BUT NOT SEEDS, STALKS, AND ROOTS; A PHYSICIAN SHALL NOT BE SUBJECT TO ARREST, PROSECUTION, OR PENALTY IN ANY MANNER FOR PROVIDING" WRITTEN CERTIFICATION" FOR THE MEDICAL USE OF MARIJUANA;" WRITTEN CERTIFICATION" IS DEFINED AS A STATEMENT OR MEDICAL RECORDS OF A PHYSICIAN, STATING THAT, AFTER HAVING COMPLETED A FULL ASSESSMENT IN A BONA FIDE PHYSICIAN-PATIENT RELATIONSHIP, THE QUALIFYING PATIENT HAS A DEBILITATING MEDICAL CONDITION AND THE POTENTIAL BENEFITS OF MEDICAL USE OF MARIJUANA LIKELY OUTWEIGH HEALTH RISKS; ANY PROPERTY THAT IS POSSESSED, OWNED, OR USED IN CONNECTION WITH THE MEDICAL USE OF MARIJUANA, OR ACTS INCIDENTAL THERETO, SHALL NOT BE FORFEITED; A QUALIFYING PATIENT UNDER EIGHTEEN YEARS OLD MAY NOT USE MARIJUANA MEDICALLY UNLESS THE PHYSICIAN HAS EXPLAINED POTENTIAL RISKS AND BENEFITS TO THE QUALIFYING PATIENT AND PARENT, GUARDIAN, OR PERSON HAVING LEGAL CUSTODY, WHO CONSENTS IN WRITING TO THE PATIENT'S USE OF MARIJUANA, TO SERVE AS PRIMARY CAREGIVER, AND TO CONTROL ACQUISITION, DOSAGE, AND FREQUENCY OF USE OF MARIJUANA; WITHIN NINETY DAYS AFTER THE EFFECTIVE DATE OF THIS ACT, THE BOARD SHALL PROMULGATE REGULATIONS GOVERNING THE DEPARTMENT'S CONSIDERATION OF APPLICATIONS FOR AND RENEWALS OF REGISTRY IDENTIFICATION CARDS AND ESTABLISH FEES TO GENERATE REVENUES SUFFICIENT TO OFFSET ALL EXPENSES OF IMPLEMENTING AND ADMINISTERING THIS ACT; THE DEPARTMENT SHALL ISSUE REGISTRY IDENTIFICATION CARDS TO QUALIFYING PATIENTS AND THEIR PRIMARY CAREGIVERS, IF ANY, WHO SUBMIT WRITTEN CERTIFICATION, APPLICATION OR RENEWAL FEES, AND OTHER INFORMATION REQUIRED BY THE ACT; THE DEPARTMENT SHALL VERIFY THE INFORMATION AND APPROVE OR DENY AN APPLICATION OR RENEWAL WITHIN THIRTY DAYS, AND MAY DENY AN APPLICATION OR RENEWAL ONLY IF THE REQUIRED INFORMATION WAS NOT PROVIDED OR IF THE INFORMATION WAS FALSIFIED; THE DEPARTMENT SHALL ISSUE REGISTRY IDENTIFICATION CARDS WITHIN FIVE DAYS OF APPROVAL THAT SHALL EXPIRE WITHIN ONE YEAR; THE DEPARTMENT SHALL MAINTAIN A LIST OF PEOPLE ISSUED REGISTRY IDENTIFICATION CARDS THAT IS CONFIDENTIAL, EXEMPT FROM THE ARKANSAS FREEDOM OF INFORMATION ACT, AND NOT SUBJECT TO DISCLOSURE, EXCEPT TO AUTHORIZED DEPARTMENT EMPLOYEES AS NECESSARY TO PERFORM OFFICIAL DUTIES, OR AUTHORIZED EMPLOYEES OF STATE OR LOCAL LAW ENFORCEMENT AGENCIES, ONLY AS NECESSARY TO VERIFY LAWFUL POSSESSION OF THE CARD; THIS ACT SHALL NOT PERMIT THE MEDICAL USE OF MARIJUANA ENDANGERING THE HEALTH OR WELL-BEING OF ANOTHER PERSON, OR SMOKING OF MARIJUANA IN PUBLIC TRANSPORTATION, ON ANY SCHOOL GROUNDS, IN ANY CORRECTIONAL FACILITY, OR AT ANY PUBLIC PARK, BEACH, RECREATION OR YOUTH CENTER; NOTHING IN THIS ACT REQUIRES A GOVERNMENT MEDICAL ASSISTANCE PROGRAM OR PRIVATE HEALTH INSURER TO REIMBURSE COSTS OF THE MEDICAL USE OF MARIJUANA IN ANY WORKPLACE; ALL ARKANSAS LAWS IN CONFLICT WITH THIS ACT ARE REPEALED; AND ANY INVALID PARTS OF THIS ACT ARE SEVERABLE FROM VALID PARTS. CURRENT FEDERAL LAW PROHIBITS MEDICAL USE OF MARIJUANA.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed act. See Arkansas Women's Political Caucus v.Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed act that will give the voter a fair understanding of the issues presented.Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Becker v.Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five-minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Pluggev. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic ActionCommittee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citingLeigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed act, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed ballot title due to ambiguities and misleading tendencies in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of these matters. I am therefore unable to substitute and certify a more suitable and correct ballot title pursuant to A.C.A. §7-9-107(b).
I refer to the following ambiguities and misleading aspects of the text:
 • Section 3 (b), in defining the term "debilitating medical condition," authorizes the Department of Health ("Department") to add debilitating medical conditions to those included in the act by approving "any other medical condition or its treatment" under regulations that are to be promulgated by the Board of Health ("Board"). See Section 3 (b) (3). The subsection appears to be wholly separate from, and unlimited by, the preceding definitional subsections. It refers to "petitions from the public" to add debilitating conditions, but is otherwise silent regarding any guidelines, standards, or procedures for the approval process. The absence of any limitation on the Board's regulatory authority in this regard could be viewed as circumventing the constitutional "separation of powers" doctrine, embodied in Ark. Const. art. 4, §§ 1 2. This doctrine, which prohibits the delegation of legislative authority to another branch of the state government, applies to legislative measures proposed by the people pursuant to Ark. Const. amend. 7. See generally Spradlin v. Arkansas Ethics Comm'n, 314 Ark. 108, 858 S.W.2d 684 (1993). Your proposed measure may violate separation of powers by vesting broad discretion in the Board over what constitutes additional "debilitating medical conditions" under the act.
 • In my opinion, the term "primary caregiver" is likely misleading, under controlling Arkansas case law, because it does not readily convey to the voter that this person is essentially a supplier of marijuana. The term "caregiver" might give the impression that this person actually provides some type of "care," particularly when the act employs the term "patient" with respect to the person who is being supplied with marijuana. The definition may compound the misleading tendency by stating that the "primary caregiver" is one who "has agreed to undertake responsibility for managing the well-being of a qualifying patient with respect to the medical use of marijuana." (Emphasis added). The Arkansas Supreme Court has previously rejected a ballot title based, in part, upon the use of "abstract terminology to mask plain meaning." Christian Civic Action Committee v. McCuen, 318 Ark. 241, 248, 884 S.W.2d 605(1994). It is my opinion that if faced with the question, the court might similarly conclude that the term "primary caretaker," and its definition, obscure the actual effect of the act.
 • The use of the term "agreed" in the definition of "primary caregiver" (Section 3 (g)) is ambiguous. The "primary caregiver" is one who "has agreed to undertake responsibility. . . ." The definition does not elaborate upon the term "agreed," and this gives rise to some uncertainty in interpretation. The only other reference to an agreement is found in Section 5 (b) regarding registry identification cards wherein it refers to the primary caregiver's "written agreement to undertake responsibility for managing the well-being of the qualifying patient. . . ." It seems that a written agreement is necessary to obtain a registry identification card, and thus gain protection from arrest or prosecution (see Section 4 (c)). But, significantly, a "primary caregiver" does not have to possess a registry id card in order to assert the defense of "the medical use of marijuana," according to Section 7. I am thus uncertain what is required for one to have" agreed to undertake responsibility," in order to be a "primary caregiver" who can assert this defense. In my view, this is an essential fact for the voter and should be clarified for proper reflection in the ballot title.
 • The definition of "primary caregiver" also gives rise to a question regarding the amount of marijuana that may be lawfully possessed by a caregiver. The definition provides that "[a] qualifying patient may have only one primary caregiver at any one time." It does not, however, limit the number of qualifying patients that a primary caregiver may have. This is significant in light of the provisions governing the amount of marijuana that may be possessed by a primary caregiver, which refer to the amount "for each qualifying patient" and the amount that may be "collectively possessed" by the patient and caregiver. See Sections 4 (c) and 7 (b), respectively. If the caregiver may acquire, possess, cultivate, manufacture, use, deliver, transfer, or transport the legal amount per qualifying patient, this fact should be clearly stated for the voter.
 • The definition of "qualifying patient" under Section 3 (g) is also ambiguous, in my view. A person meets the definition if he or she "has been diagnosed by a physician as having a debilitating medical condition." Beyond this, the act is silent regarding the required diagnosis. A "written certification" that a person is a qualifying patient is necessary in order to obtain a registry id card. See Section (b) (1). But this requirement apparently does not apply in order to be "diagnosed" for purposes of the definition in Section 3 (g). As with the definition of "primary caregiver," the definition of "qualifying patient" is critical because the "medical use of marijuana" defense is available to a "qualifying patient," regardless of whether the person possesses an id card. See Section 7 (a). This prompts a question regarding the evidence necessary to establish that a person has been diagnosed. This must be clarified, in my opinion, to ensure that the voter will have a clear understanding of who will qualify under the act.
 • The term "medical use" is defined in relevant part in Section 3 (e) as "the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marijuana or paraphernalia relating to the administration of marijuana to alleviate the symptoms or effects of a qualifying patient's debilitating medical condition." This definition is critical to the act's substantive provisions. Section 4 (a) of the act protects qualifying patients who have registry identification cards from "arrest, prosecution, or penalty [or loss of privileges] for the medical use of marijuana. . . ." (Emphasis added). Section 4 (c) extends this protection to primary caregivers "for assisting a qualifying patient with the medical use of marijuana. . . ." (Emphasis added). Section 7 establishes the defense of "medical use of marijuana" for qualifying patients and primary caregivers, regardless of whether they possess registry id cards. A clear understanding of the "medical use" definition is therefore essential. The difficulty in applying the definition arises, in my opinion, from the phrase "to alleviate the symptoms or effects of a qualifying patient's debilitating medical condition." The question that arises when considering the protections extended under Section 4 and the defense under Section 7 is whether this phrase adds an element that must be established in order to gain the protections or assert the defense. Or, on the other hand, is there a presumption that the particular possession, use, delivery, etc., of marijuana, is" to alleviate the symptoms or effects" as long as the person is a "qualifying patient" or a "primary caregiver" (and possesses an id card, if seeking the protections under Section 4)? If, in effect, the act establishes such a presumption, I believe this must be clearly conveyed to the voter. Because of my uncertainty in this regard, however, I am unable to substitute and certify language to this effect in the ballot title.
 • Another question that arises under Section 4 pertaining to the protection from arrest, prosecution, etc., relates to the legal amount of marijuana. The amount is established under this section as "six marijuana plants and one ounce of usable marijuana for each qualifying patient." Subsection (a) addresses the qualifying patient and subsection (c) addresses the primary caregiver. Your proposed ballot title summarizes these provisions by stating that "the amount of marijuana collectively possessed between the `qualifying patient' and `primary caregiver' [cannot] exceed six marijuana plants and one ounce of `usable marijuana[;]'" (Emphasis added). The "collectively possessed" language does not clearly follow, in my opinion, from the text of the measure. I believe, instead, that subsections (a) and (c) might reasonably be construed to establish separate legal amounts for the medical use by a qualifying patient and a primary caregiver who assists a qualifying patient (or patients, as noted above). This interpretation would, of course, vary substantially from the ballot title language that you have submitted. This ambiguity must be clarified for proper reflection of these provisions in the ballot title.
 • Section 6 states that the act shall not permit, inter alia, the smoking of marijuana at "any public park, public beach, public recreation center, or youth center." You have summarized this provision as applying to "any public park, beach, recreation or youth center[.]" See proposed ballot title. It appears from the text, however, that the word "public" does not modify the term "youth center." If this was an oversight, it should be corrected for inclusion in the ballot title.
 • Several other questions arise under Section 6 concerning the scope of the act. According to Section 6 (a), the act "shall not permit . . . [t]he medical use of marijuana that endangers the health or well-being of another person, . . ." and the smoking of marijuana in certain specified places. The question is whether this infers that the medical use of marijuana is permitted in other places not specified. In other words, does this mean that the act permits the medical use of marijuana in all other locations? Subsection (b) states that "[n]othing in this Act shall be construed to require . . . an employer to accommodate the medical use of marijuana in any workplace." Does this mean that the act requires all others to accommodate the medical use of marijuana? This should be clarified so that the voters will have a clear understanding of the extent to which the medical use of marijuana may otherwise be prohibited.
 • Section 7, which establishes the defense of "medical use of marijuana," requires evidence that "the qualifying patient and primary caregiver, if any, collectively possessed no more marijuana than was reasonably necessary to ensure the uninterrupted availability of marijuana for the purpose of alleviating the symptoms or effects of the qualifying patient's debilitating medical condition." (Emphasis added). The act does not elaborate further upon this evidentiary element. Your proposed ballot title summarizes this provision by simply restating it. This is insufficient, in my view. I am unable to substitute language, however, because I am uncertain as to the meaning or effect of the emphasized phrase. In an analogous context involving constitutional due process concerns, the question is whether persons of ordinary intelligence can guess at the statute's meaning. See Rockefeller v. U.S., 572 F. Supp. 9 (E.D.Ark. 1982), aff'd 718 F.2d 290, cert. denied 466 U.S. 962. Although this test of vagueness may not be strictly applicable to the language in question, the effects of your initiated act on current law must be clearly stated in the ballot title. And in my opinion this cannot be determined under the existing text.
 • Your proposed ballot title makes no reference to the fact that the manufacture and distribution of marijuana is currently prohibited under federal law. (21 U.S.C. § 801 et seq., the Controlled Substances Act; see also U.S. v. Oakland Cannabis Buyers' Cooperative, 532 U.S. 483
(2001)). Reference to this body of law is necessary, in my view, to give the voter a fair understanding of the effects of your measure on current law.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matters discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MIKE BEEBE Attorney General